ARMENIUS C. POLE *vs.* MARY C. PIETSCH and WILLIAM F. THIEDE, Trustees of OTTO PIETSCH.

*Construction of a Devise—Trustees—Discretionary powers—Liability of the Income of a Trust fund held under discretionary powers, for Medical services rendered a minor cestui que trust, and for his Support and maintenance—Enforcement of such Claim in Equity.*

A testator gave his estate to his widow and son-in-law in trust for his children by a former marriage; the income to be invested until the youngest of them should come of age, and then said estate to be equally divided among such of his said children as should then be living, and the descendants of any deceased child, *per stirpes.* He further directed the trustees to allow from time to time, so much of the income as they in their discretion, should think proper, for the education and support of his minor children by said former marriage. One of said children died before arriving at age. On a bill filed against the trustees by a physician, to compel the payment by them of his bill for medical services rendered said child, during his sickness, it was HELD:

1st. That in the exercise of the discretionary power conferred on the trustees, a Court of equity had no right to interfere, provided it was honestly and reasonably exercised.

2nd. That they must however act in good faith, having a proper regard to the wishes of the testator, and the nature and character of the trust reposed in them.

3rd. That the proof in the case showed that the discretion reposed in the trustees by the testator had not been fairly and reasonably exercised; and a Court of equity on application would have directed part of the income from the trust estate to have been applied to the support of the said minor child; and have directed further that he should be furnished with proper medical treatment during his sickness.

4th. That as the proof showed that the services of the complainant were rendered in good faith, and his charges appeared to be fair and moderate, his claim should be paid out of the income, or the

accumulated income in the hands of the trustees, if sufficient for that purpose.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued for the appellant before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J., and submitted on brief for the appellees.

*George T. Baggs,* and *Chew Snebly,* for the appellant.

*J. Swan Frick,* and *William F. Frick,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The testator, Otto Pietsch, devised his entire estate to his wife, and son-in-law William F. Thiede, in trust, for his nine children by a former marriage, the income to be invested until the youngest child should come of age, and then the whole estate to be distributed equally among such of the children as should then be living, and the descendants of any deceased child, *per stirpes.*

He further directed the trustees to allow from time to time, so much of the income as they in *their discretion should think proper* for the *education and support* of his *minor children* by his first wife.

He assigns as reason for not making any provision for the children by his second marriage, that his wife's interest in his estate, would enable her to provide for them, and thus equalize the shares of all his children in his property.

It does not appear from the record, but it was stated in argument, that of the *cestuis que trust, two* only were *minors* at the time of the testator's death. One of these Charles, was in his seventeenth year, and had a clerkship

in a store, by means of which he was able to support himself. In 1877, three years after his father's death, Charles was taken sick, first with typhoid pneumonia, followed by disease of his lungs, of which after a lingering illness of eighteen months he died.

This bill is filed against the appellees, trustees under the will, to enforce the payment of a claim of the appellant, for medical services rendered to Charles, during his sickness.

To this demand, the appellees say, that under the will of the testator, they had the *discretionary power* to apply so much of the income of the estate to the education and support of the minor children, as they should think proper; that they had contributed liberally to the support of Charles, and during his last illness, had employed Dr. Christopher Johnston, the family physician, to attend him, and they deny the complainant has any just claim whatever against them.

In the exercise of the discretionary power thus conferred on the trustees, a Court of equity has no right to interfere, provided it is honestly and reasonably exercised. They must however act in good faith, having a proper regard to the wishes of the testator, and the nature and character of the trust reposed in them. *Clarke vs. Parker*, 19 *Ves.*, 1; *French vs. Davidson*, 3 *Madd.*, 396; *Kemp vs. Kemp*, 5 *Ves.*, 849.

The testator had confided to them the care of the minor children by his first marriage, and directed them to use so much of the income of his estate, as they should think proper, for their support and education. Now, how was this discretion exercised towards Charles? The proof shows, that from the time of his father's death, up to the time he was taken sick, nearly three years, he had by his own exertions supported himself, without aid or assistance of any kind from the trustees. And even after he was taken sick, so long as he could go out, he still endeavored

to earn a support by giving music lessons, at a time too when according to the testimony, he was unable to undergo the fatigue and labor. The last eighteen months of his life, was one continuous struggle with disease, poverty and want. Some of his brothers, and Mrs. Thiede, his sister, were kind to him, and contributed no doubt, what they could, but at times he was without money to buy food or medicine. He was obliged to give up his room, because he was unable to pay the rent, and at last he found a home on Boundary avenue, near a car stable, where he died. During the first twelve months of his sickness and sufferings of every kind, these trustees to whom the testator had confided the care of his infant children, did not contribute one dollar to his support, and yet they were in the yearly receipt of six hundred dollars from the trust estate, out of which they were directed to allow so much as they should think proper, not only for the support, but the education of the two minor children. And during the last five months of his life, they doled out to him from seventeen to twenty dollars per month, out of which he was to pay his rent, buy his medicine, and support himself and wife. So out of the entire income received by the trustees from the estate, amounting in the five years, according to their own admission, to at least three thousand dollars, they allowed this *cestui que trust*, who was sick and dying, about two hundred dollars. And yet in the face of such proof as this, they in their answer say, that they had contributed liberally to his support, and had employed the family physician to attend him in his last illness. And the record shows too that the medical services rendered by the family physician during the eighteen months sickness of this young man, *was one visit*, and then for the purposes of consultation with the appellant, whose claim for medical services they now refuse to pay. And the stepmother who was one of the trustees, and living in the same city, admits in her own testimony,

that for weeks and months, she neither knew, nor heard anything about the condition of this *cestui que trust.*

This is a painful record, and we regret to say, the proof from beginning to end, shows, that the discretion reposed in these trustees by the testator, has not been *fairly and reasonably exercised.* It cannot be questioned, that a Court of equity on application, would have directed part of the income from the trust estate, to have been applied to the support of this young man; and have directed further, that he should be furnished with proper medical treatment during his sickness. And as the proof shows that the services of the appellant were rendered in good faith, and the charges appear to be fair and moderate; it is but just and right that his claim should be paid out of the income or the accumulated income in the hands of the trustees.

The decree below dismissing the bill must therefore be reversed, and the cause remanded to the end, that the trustees may be compelled to show how, and in what manner they have expended the yearly income from the trust property; and with the further direction that the claim of the appellant shall be paid, if there be income or accumulated income in the hands of the trustees sufficient for that purpose.

<div style="text-align:right">

*Decree reversed, and
cause remanded.*