R. Brown Henderson, Margaret J. Lewis, and John S. Lewis *vs.* William A. Henderson and others.

*Construction of Will—Rule in Shelley's Case—Trust for Children.*

A testatrix left a will dated the 8th day of November, 1876, in the second clause of which she disposed of certain leasehold property as follows: "I give, devise and bequeath unto my son W. T. H., his heirs, executors and administrators, all those two lots of ground and improvements situate on the north side of N. Gay street, in the City of Baltimore, and known as Nos. 181 and 183, in trust and confidence nevertheless to hold, have, receive and collect all the rents, issues and profits thereof, and use and dispose of the same as follows, that is to say, to pay all ground rents, taxes, water rents, repairs and other expenses that may be necessary to keep the said property in good tenantable condition, and unincumbered, and to disburse the net proceeds that may remain as follows: to reimburse himself all proper expenses and commissions, and to divide the balance equally among and between my three children, R. B. H., M. J. L., and himself, W. T. H., share and share alike, and in case of the death of any one or more of my said children, then the share or shares of such child or children to go to his or her lineal descendants, and in case either of my said children should die without leaving issue, then the share of such child shall go to my surviving child or children equally, share and share alike." W. T. H., one of said children of the testatrix, and trustee under said clause, died after the date of said will, but in the life-time of his mother, leaving two children. On a bill filed by the other two children of the testatrix, for a construction of said will, it was Held:

1st. That the two children of W. T. H. were each entitled to the one-sixth absolutely of the leasehold property mentioned in said second clause of the will.

2nd. That a trustee should be appointed to execute the trust, in the place of W. T. H. deceased; and that he should hold one-third of the property for each of the surviving children of the testatrix; and that on the death of either of said children of the testatrix

the share thus held should go absolutely and free from the trust, to his or her issue, if there should be any then living, *per stirpes;* and if none should then be living, then to his or her surviving brother or sister; and if neither should then be living, then to the personal representatives of the testatrix.

In the construction of wills, the intention of the testator must be sought for and ascertained. If that intention is not in conflict with the settled policy of the law, it will always be respected and allowed to operate.

The intention of the testator must in most cases be gathered from the peculiar terms of the instrument under consideration, without reference to artificial and technical rules of interpretation.

In this State, even before the Act of 1862, ch. 161, the rigidity with which the *Rule in Shelley's Case* has been applied elsewhere, seems to have been somewhat relaxed; and it has been held that the word "issue" in a will is sometimes a word of limitation, and sometimes of purchase according to the context of the devise, and the apparent intention of the testator.

Where the testator manifests an intent to give the first taker only an estate for life, and uses the words "issue," "sons," "children," or "descendants," the case will be withdrawn from the operation of the rule.

In regard to executory trusts, in Courts of equity the rule will be adhered to only in cases literally within it, and where circumstances take the case out of the letter of the rule, it will be held subservient to the manifest intention which led to the creation of the trust.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellants against the appellees, to obtain the construction of a clause in the will of Mrs. Eliza C. Henderson, making disposition of certain leasehold property. The appeal was taken from the decree of the Court below giving a construction to said clause. The case is stated in the opinion of this Court.

The cause was submitted for the appellants to ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Carlton Shafer*, and *J. Wilson Leakin*, for the appellants.

No counsel for the appellees.

YELLOTT, J., delivered the opinion of the Court.

This record discloses the following facts: Eliza C. Henderson, late of Baltimore City, on the eighth day of November, 1876, executed her last will and testament; in the second clause of which, she says:

"I give, devise and bequeath unto my son, William Thomas Henderson, his heirs, executors and administrators, all those two lots of ground and improvements, situate on the north side of N. Gay street in the City of Baltimore, and known as Nos. 181 and 183, in trust and confidence nevertheless, to hold, have, receive and collect all the rents, issues and profits thereof, and use and dispose of the same as follows, that is to say, to pay all ground rents, taxes, water rents, repairs and other expenses that may be necessary to keep the said property in good, tenantable condition, and unincumbered, and to disburse the net proceeds that may remain as follows: to reimburse himself all proper expenses and commissions, and to divide the balance equally among and between my three children, Robert Brown Henderson, Margaret Jane Lewis and himself, William Thomas Henderson, share and share alike, and in case of the death of any one or more of my said children, then the share or shares of such child or children to go to his or her lineal descendants, and in case either of my said children shall die without leaving issue, then the share of such child shall go to my surviving child or children equally, share and share alike."

This will, with its codicils, was admitted to probate on the 22d day of December, 1883.

The said William Thomas Henderson, the trustee named in the will, died in the life-time of his mother, the testatrix, leaving two children, William Andrew Henderson and Robert Keen Henderson, infant defendants in the Court below, and appellees in this record. The other appellees, defendants below, are John Henderson Lewis, Albert Urband Lewis, and Margaret Lewis, who are the children of Margaret Jane Lewis, and grandchildren of the testatrix, and are infants residing in the State of Virginia. The bill of complaint was filed by Robert Brown Henderson and Margaret Jane Lewis, surviving children of the testatrix, uniting therein with John A. Lewis, husband of said Margaret Jane, and David Henderson, executor of said will, for the purpose of obtaining a judicial construction of the clause which has been transcribed.

In the construction of wills, the intention of the testator must be sought for and ascertained. If that intention is not in conflict with the settled policy of the law it will always be respected and allowed to operate. It is therefore apparent that the donor of property by a testamentary disposition has an almost unlimited scope within which to exercise his judgment or to gratify his caprice. Multitudes of wills are being brought into Courts for construction, and seldom do we find two of them exactly similar. Unlike deeds of conveyance in this respect they are as multiform and distinct in their structure, phraseology and purposes as are the mental operations, the motives and feelings of the different testators. Thus it is that, apart from the enunciation of some general principles applicable to all transmissions of property by last will and testament, the citation of authorities is of but little utility. The exercise of what seems to be sound judgment and common sense may, however, be safely invoked and relied upon in the ascertainment of intention. The peculiar sit-

uation of this testatrix and the relations subsisting between her and the recipients of her bounty, must therefore be considered in connection with the language of the document itself in order that we may be fully enlightened in regard to the real motives and intent by which she was controlled in the execution of this will.

At that time Eliza C. Henderson had three children. Two of these children are still living, and her son William Thomas died after the execution of the will, but before the decease of his mother. Robert Brown Henderson and Margaret Jane Lewis, contend that on the death of their mother they each became entitled to, and they now claim an absolute estate in, one-third of the property in question. Now it seems to be entirely consistent with the suggestions of reason and common sense to suppose that if Eliza C. Henderson intended that as soon as her death occurred, each of her three children should have an absolute estate in one-third of her property, she would not have made a will creating a trust which would have been wholly unnecessary and a mere work of supererogation, as by mere operation of law each of her three children or their heirs, would have become entitled to an equal distributive share of said property. We are thus led to inquire for what purpose was the will made and the trust created? Evidently in order that her bounty might not fail to be extended to her grandchildren. If a third was left to a son or daughter as an absolute estate, he or she might subsequently to the death of the testatrix, dispose of his entire share and waste the proceeds in prodigal expenditures, and the grandchildren would be left destitute. But by creating the trust, her children enjoyed the income during their lives, and the *corpus* of the estate was protected and kept intact for the benefit of her descendants in the second degree. This seems to have been the intention of the testatrix in so carefully protecting the property by the creation of a trust, and by requiring the active in-

tervention of a fiduciary agent. In regard to the construction of wills, this Court, adopting the language of Chancellor KENT, has said that "though we are not to disregard the authority of decisions, even as to the interpretation of wills, yet it is certain that the construction of them is so much governed by the language, arrangement and circumstances of each particular instrument, that adjudged cases become of less authority and are of more hazardous application than decisions upon any other branch of the law." *Douglas vs. Blackford*, 7 *Md.*, 22.

The intention of the maker of a will is the main and important question presented in its construction. That intention must, in most cases, be gathered from the peculiar terms of the instrument under consideration, without reference to artificial and technical rules of interpretation. But in this controversy an effort has been made to apply the rule in *Shelley's Case* and thereby create an absolute vested estate in the children of the testatrix. *Preston* in his *Treatise on Estates, p.* 263, thus defines the rule:

"When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of any estate, of an interest of the same legal or equitable quality, to his *heirs* generally, or *heirs of his body*, as a class of persons to take in succession, from generation to generation, the limitation to the *heirs* entitles the ancestor to the whole estate." In England the operation of the rule seems to have been always confined to the use of the word *heirs* or *heirs* of the body, and the rule did not apply if the words children, issue, or descendants were employed. The reason for this distinction is apparent. A man may have children not born in lawful wedlock; his issue may be illegitimate; his descendants bastards. Property may be devised to them, but they necessarily take by purchase, and a new stock is thus created. The word heirs, how-

ever, implies legitimacy and a capability of taking by inheritance. Hence the rule was held not to apply unless the word *heirs* was used in the instrument. *Doe, Lessee of the Earl of Lindsey vs. Colyear*, 11 *East*, 564; *Goodtitle on the Demise of Sweet vs. Herring*, 1 *East*, 264; *Lowe vs. Davies*, 2 *Ld. Raym.*, 1561; 2 *Roll. Ab.*, 417.

In this State, even before the Act of 1862, ch. 161, the rigidity with which the rule has been applied elsewhere seems to have been somewhat relaxed; and it has been held that the word issue in a will is sometimes a word of limitation and sometimes of purchase, according to the context of the devise and the apparent intention of the testator. There can be no doubt that where the testator manifests an intent to give the first taker only an estate for life, and uses the words issue, sons, children or descendants, the case will be withdrawn from the operation of the rule. And in regard to all executory trusts, it is undoubtedly true that in Courts of equity the rule will be adhered to only in cases literally within it, and that where circumstances take the case out of the letter of the rule, it will be held subservient to the manifest intention which led to the creation of the trust. *Lyles vs. Digges' Lessee*, 6 *H. & J.*, 364; *Horne vs. Lyeth*, 4 *H. & J.*, 431; *Dickson vs. Satterfield*, 53 *Md.*, 320; 4 *Kent Comm.*, 240.

Now, as the intention of the maker is to be gathered from the whole will, we find the testatrix, in the fifth clause, giving an estate for life to her sister and then to Margaret Lewis and "her *heirs forever;*" while, in the clause now to be construed, she carefully avoids the use of the word *heirs*, and designates her grandchildren as "lineal descendants" in one place, and as "issue" in another. This careful avoidance of words of limitation and inheritance is suggestive of an earnest solicitude on the part of a skilful draughtsman to escape from the operation of the rule in *Shelley's Case*, which he knew would run counter to the intentions of the testatrix.

It has been argued, that if the estate did not vest absolutely in the children of the testatrix, the will would create a perpetuity.    Undoubtedly if this trust had been created by deed there would have been some soundness in this argument.    But in the case of wills, the Act of 1825, ch. 119, (sec. 305 of Art. 93 of the Code) provided against the omission of testators.    " It assumes that a testator may not know that terms of limitation are necessary, and directs, that if no word of perpetuity are added to the devise, it shall be intended that the whole estate and interest of the testator was designed to be passed." *Hammond vs. Hammond,* 8 *G. & J.,* 441; *Fairfax, et al. vs. Brown,* 60 *Md.,* 55.

There being no words of limitation or perpetuity in this clause of the will, upon the death of each of the life-tenants, by the operation of this statute, an absolute estate vests in the next takers; and upon the death of all the life-tenants, the trust ceases to be executory and becomes executed, the object for which it was created having been accomplished.

It seems therefore to be clear that the children of William Thomas Henderson are each entitled to the one-sixth absolutely of the leasehold property mentioned in the clause of the will thus construed.    It is also apparent that a trustee should be appointed to execute the trust in the place of William Thomas Henderson, deceased ; and that he should hold one-third of the property for each of the surviving children of the testatrix ; and that on the death of either of said children of the testatrix, the share thus held should go, absolutely and free from the trust, to his or her issue, if there be any then living, *per stirpes,* and if none should then be living, then to his or her surviving brother or sister, and if neither should then be living, then to the personal representatives of the testatrix, Eliza C. Henderson.    The costs to be paid out of the trust fund.

There being no error in the decree of the Circuit Court, said decree should be affirmed.

*Decree affirmed.*

(Decided 25th June, 1885.)