ALFRED P. BURT, Trustee, and MARY E. BURT *vs.* JANE HENDERSON GILL and ROBERT L. GILL.

*Right of Life-Tenant of Trust Fund to Income Accumulated During Minority—Release to Trustee.*

A testator gave a sum of money to trustees to invest the same, and to pay the income, or so much as may be necessary, for the maintenance and education of testator's infant daughter, until she should attain the age of eighteen years, and thereafter to pay the net income to her during life, and after her death to transfer the whole trust fund and property to her children; or in case of her death without issue then to pay the same to testator's sisters. While testator's daughter was under eighteen years the fund yielded more than was necessary for her support, and the trustees invested the unused income. Upon her arrival at age she claimed this amount as belonging absolutely to her. *Held,* that since there was no direction to the trustees to accumulate income during the minority of the daughter and add it to the *corpus* of the estate, and since it was testator's purpose, deducible from the whole will, to devote the entire income of the fund to the use of his daughter, she is now entitled to the unused income which had been so accumulated.

When a *c. q. t.* executes a release to her trustee from all claims on account of income due according to the auditor's accounts filed in the case, such release applies only to the income awarded to her by the accounts and not to that which was invested by the trustee, or held subject to the further order of the Court.

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS, PEARCE and SCHMUCKER, JJ.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the appellant, cited *Milligan* v. *Pleasants*, 74 Md. 8; *Ellingwood* v. *Beare*, 59 How. Pr. 503; *Clement's Appeal*, 49 Conn. 519; *Huber's Appeal*, 80 Pa. St. 34; *Hanson* v. *Graham*, 6 Vesey, 239; *Colton* v. *Colton*, 127 U. S. 321.

*Wm. S. Bryan, Jr.* (with whom was *E. N. Rich* on the brief), for the appellees.

It will always be supposed, where the contrary does not appear, that a parent, in providing for an only and dependent child, intended her to take the gift in the manner most beneficial to her. It was undoubtedly more beneficial to Jane Henderson that the estate should vest in her at the earliest practicable moment, and that she should throughout be entitled to the sole beneficial interest in the entire income : therefore, on principle and apart from any authority, we maintain that it is clear that the life-estate vested in Jane Henderson at the death of the testator, and that, consequently, she became entitled to the whole of the income from that date, her right to the immediate enjoyment of it being subject to the control of the trustees, on account of her infancy. *Waters* v. *Waters*, 24 Md. 445; *Tayloe* v. *Mosher*, 29 Md. 451; *Budd* v. *Garrison*, 45 Md. 421.

There are certain rules of construction which are applied as a means of ascertaining the intention of a testator, and they all tend to show that Jane Henderson was entitled to a vested estate immediately on the death of her father. (*a.*) When a bequest is to a child of the testator having no other provision, whether a future time is fixed for payment or not, interest will be allowed from the testator's death. *Von der Horst* v. *Von der Horst*, 88 Md. 127; *White* v.

*Donnell*, 3 Md. Ch. 526, 533 ; *Budd* v. *Garrison*, 45 Md. 420.

(*b*.) The appointment in the will of a guardian for infants to whom a legacy is made payable is often a controlling fact in determining that interest should be paid on the gift during the minority of such infant. *Budd* v. *Garrison*, 45 Md. 421.

In this will Mr. Henderson appoints the same gentlemen he made trustees " guardians of my said daughter, Jane Henderson." There could be no sufficient reason for his appointing these testamentary guardians for his daughter unless they were to hold in that capacity all the surplus income over the amount needed for the support, maintenance and education of Jane Henderson. Whether Mr. Burt has strictly observed this rule in the *administration* of the estate is immaterial. What Mr. Burt *did* after the testator's death, can throw no light on what the testator *meant him to do.*

(*c*.) Even where a legacy is apparently contingent, yet if the testator direct that the fund be *severed* at once from his estate and be set apart for the benefit of the legatee, the title thereto will vest immediately. *Beach on Wills*, section 173 ; *Saunders* v. *Vantier*, Craig & Phillips, 240, 248 ; *Lister* v. *Bradley*, 1 Hare, 10, 13. Here the hundred thousand dollars was at once separated from the rest of the testator's estate and set apart as a separate fund.

(*d*.) The law always favors the early vesting of estates. *Tayloe* v. *Mosher*, 29 Md. 457 ; *Meyer* v. *Eisler*, 29 Md. 33.

The trustees were to apply the rents, interest and income derived from the trust, or " so much as may, in the judgment of the said trustees, be necessary to the support, maintenance and education of" Jane Henderson. Under this direction, if there was any sudden emergency making it necessary to make extraordinary expenditures for the support or maintenance of Jane Henderson, it would be the duty of the trustees to use not only the whole of the current income for that purpose, but any accumulations of income for past years. *Darne* v. *Catlett*, 6 H. & J. 475.

After Jane's death, the limitations over of " *the said trust-*

*funds and property*," evidently meant the $100,000 set apart by the will.    There is no limitation disposing of any accumulations of income.    *Worthington* v. *McPherson,* 8 Gill, 51 ; *Clark* v. *Anderson,* 10 Bush. 99 ; *Chapman* v. *Chapman,* 87 Ky. 140 ; *Riggs* v. *Craig,* 26 Hun. 89 ; *Mayo* v. *Mayo,* 4 Md. Ch. 103 ; *Hambleton* v. *Darlington,* 36 Md. 434 ; *Cole* v. *Ensor,* 3 Md. 446.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a *pro forma* decree of the Circuit Court of Baltimore City passed in an amicable proceeding to procure a construction of the will of the late Gustavus P. Henderson.    The question at issue is the proper disposition of that portion of the income of the estate given in trust by the testator for his daughter Jane, which accrued before she reached the age of eighteen years and was not consumed in her support and education.

The testator was a widower when he made his will and when he died.    He left surviving him no issue except his infant daughter Jane, then about eight years old, who subsequently married her co-appellee, Robert L. Gill.

Mr. Henderson, after remembering in his will various relatives and friends, made provision for his infant daughter by giving to three trustees, of whom the appellant is the only one now acting, the sum of $100,000, upon the following trusts, *i. e.,* " In trust to invest the same in good irredeemable ground-rents in the city of Baltimore or other safe and reliable securities or investments in their discretion, and apply the rents, interest and income derived therefrom, or so much thereof as may be necessary to the support, maintenance and education of my daughter, Jane Henderson, until she shall attain the age of eighteen years, and thereafter to pay the net amount of said rents, income and interest unto my said daughter for and during her natural life, for her own separate use and benefit and so that the same shall in no manner be liable for the debts, contracts or engagements or subject to the control of any husband she may have ; and

from and immediately after the death of my said daughter, in trust, to pay, transfer, grant, convey and deliver the whole amount of said trust funds and property unto the child, children and descendants of my said daughter whom she shall leave surviving her, to be equally divided amongst them; if more than one, *per stirpes* and not *per capita*, in absolute interests, free from said trust." Then follows a devise over in similar terms to the testator's two sisters in default of surviving issue of the daughter.

The trust-fund yielded, during the time the daughter was under eighteen, more income than was required for her support and education. The trustee invested the unused income, and from time to time made reports of it to the Circuit Court, under whose supervision the trust was administered, and he now holds it subject to the event of this suit.

The *pro forma* decree appealed from determined that this unused income belonged absolutely to the testator's daughter, Mrs. Gill, as the life-tenant of the trust-estate, and the trustee appealed that the question at issue might, for his more complete protection, be passed upon by this Court.

In order to ascertain the intention of a testator the Court will look first to the contents of the will itself and especially to the language of the particular portion of it in reference to which the doubt exists. If the intention cannot be clearly made out from the language of the will, taken in its usual and proper acceptation, then the peculiar situation of the testator and the relations subsisting between him and the objects of his bounty will be considered in connection with the language of the will and it will be interpreted, with the aid of the light thus thrown upon it, in accordance with the accepted canons of construction. *Jones* v. *Sothoron*, 10 G. & J. 191 ; *Branson* v. *Hill*, 31 Md. 188 ; *Henderson* v. *Henderson*, 64 Md. 188–9.

The diversity in the situation and purposes of testators, as well as in the structure and phraseology of their wills, is so great that, although the authority of decisions is not disregarded in the interpretation of wills, adjudged cases become

of less authority and are more hazardous of application than in any other branch of the law, and the Courts are strongly disposed to confine themselves to the particular will under consideration in the attempt to ascertain the intent of its author. *Douglas* v. *Blackford*, 7 Md. 22.

Looking at the contents of the will before us we find that in disposing of the income to be produced by the trust-fund before the daughter became eighteen years of age, it directs the trustees to "*apply the rents, interest and income*," to her support and education, but at the same time it gives to them authority, in their discretion, to apply less than the entire income to that purpose. This authority to apply less than the whole income to her support is not the primary direction, but is rather in the nature of a secondary and alternative one and it should not be permitted to obscure the purpose of the testator to devote the income of the estate to the use of his daughter, if we find that to have been his governing motive in creating the trust-estate.

The will nowhere makes any separate or distinct mention of the portion of the income which would remain unused if the trustees did not apply it all to the daughter's support and education. There is no direction that it be retained or invested by the trustees, or accumulated and added to the *corpus* of the estate, nor is there a separate disposition of it to be found in any part of the will.

The appellees contend that the manifest purpose of the testator was to give his daughter the benefit of all of the income produced by the trust-fund during her life and that the direction in the will to the trustees to pay over to her when she became eighteen "the net amount of said rents, income and interest," following as it does immediately after the authority to apply a portion of the income to her support while under eighteen, operates as an actual gift to her of the unused portion of the income.

The appellant, on the contrary, while submitting himself as trustee to the Court's control, suggests and contends that an implied direction to accumulate this unused income and

add it to the *corpus* of the estate, arises from the terms of the will and that the devise to the remaindermen, at the death of the daughter, of " the whole amount of said trust funds and property " was intended to and did include the unused income.

We think that the construction of the will contended for by the appellees is the correct one. The clause of the will creating the trust seems to us to manifest a general intent on the part of the testator to dedicate to the use of his daughter the income of the trust-estate as long as she lived and to preserve the *corpus* of the estate for her issue or, in default of issue of her, for his two sisters. The daughter is excluded from the ownership and control of the *corpus* of the estate, which cannot be encroached upon for her relief no matter how meagre the income may be and she ought not to be called upon to invest any part of the income to increase the *corpus*, unless the will distinctly requires it to be done. There is no express direction in the will to do anything with the income except to pay it to the daughter or expend it for her benefit, nor is there any suggestion or implied direction that any part of it should go to or be applied to the benefit of any other person, unless such an implication arises from the expressions used to describe the estate given at her death to the remaindermen.

We are unable to come to the conclusion that the words used to describe this remainder, *i. e.* " the whole amount of said trust-funds and property," standing as they do in this will without explanation or specification, should be held to include any portion of the income which accrued during the life of the daughter. To accumulate the unused income now under consideration and invest it for the benefit of the daughter for life, with remainder to her successors in the title to the trust-fund, would result in making her father's will give to her an absolute estate in part of the income of the trust-property and only a life-estate in the rest of it. We find nothing in the will indicating such an intention on his part. The law favors the early vesting of estates, and

a direction to accumulate the income accruing during any portion of a life-estate, for the benefit of the remaindermen, ought to appear expressly upon the face of the will or to arise by necessary implication from its provisions. *Evans* v. *Iglehart*, 6 G. & J. 172; *Tayloe* v. *Mosher*, 29 Md. 443; *Fairfax* v. *Brown*, 60 Md. 50; *Crisp* v. *Crisp*, 61 Md. 152; *Merryman* v. *Long*, 49 Md. 546.

The fact that the will does not require the entire income to be expended for the daughter's benefit during her minority is not significant of a purpose to deprive her of the title to the unused portion of it. Testators frequently restrict or authorize trustees to restrict the amount of income which may be expended for their daughters while young and unmarried, but such restriction has never been held to change the character of the devise. *Fairfax* v. *Brown*, 60 Md. 55–6–7.

In the present case the equitable life-tenant of the trust-fund was the only daughter of the testator. She was nearer to him in affection than any other person mentioned in his will and must have constituted the first object of his thought and care. At his death she was an infant of tender years and the scheme of the trust-estate created by his will was devised for her protection, with the paramount purpose of providing for her comfort and happiness so long as she lived. As between her and her successors in the title, whose identity is even now uncertain, it must be presumed that he would in every case have preferred her and her interest and welfare. These incidents of the testator's situation and the relation subsisting between him and the objects of his bounty all tend to strengthen the conclusion that he intended the entire income produced by the trust-estate during the life of his daughter to go to her, and when they are coupled with the further circumstance, that no clear purpose to accumulate any part of the income is expressed on the face of the will or manifested by the character of its provisions, they fully support the construction of the will adopted by the decree appealed from.

The case of *Milligan* v. *Pleasants*, 74 Md. 8, was much relied on by the appellant's counsel, who claimed that the principle on which it was decided was conclusive of the present appeal in his favor ; but a careful examination of the case shows that it is plainly distinguishable from the one now under consideration. In that case the declaration of trust, which was before the Court for construction, contained an express direction to the trustee "*to accumulate the income*" of the fund until the *cestui que trust*, Milligan, arrived at twenty-two years of age and then to invest it in a farm in trust for him for his life, with remainder to his children. The trustee was given a discretionary power to apply the income to Milligan's maintenance, instead of accumulating it, for such portion as he might think best of the period before Milligan reached twenty-two years of age. The trustee did not exercise the power to apply part of the income to Milligan's maintenance, but accumulated all of it, and no farm was purchased when he reached twenty-two years of age, because it was deemed to be an unwise investment. Under these circumstances Milligan asked for a decree requiring the trustee to pay to him absolutely the income which had accrued before he became twenty-two years old, but the Court refused his application upon the ground that the trustee *was authorized by the terms of the trust to accumulate the income* and having done so he could not be called upon to pay it over to the life-tenant.

In the case now under consideration there is a total absence from Mr. Henderson's will of anything like an express direction to the trustee to accumulate any portion of the income of the trust-estate nor do we think that such a direction can be fairly implied from the contents of that instrument.

When the daughter came to be eighteen years of age she executed a release to her trustee for all of the income due to her by him, but as the release on its face refers to "said income" as that appearing in the auditor's accounts from time to time filed in the case, it should be held to apply only to such income as was awarded to her by the auditor's

accounts and not to that which was retained by the trustee and invested or held subject to the further order of 'the Court.

The decree will be affirmed, the costs to be paid out of the unused income.

*Decree affirmed.*

(Decided March 15th, 1899.)

PEARCE, J., dissented and delivered the following opinion:

It is my misfortune not to be able to agree with the conclusions of my brothers. in this case, notwithstanding my sincere deference to their superior and united judgment, and I think it proper to state the grounds of my dissent. I shall not cumber this opinion with any reproduction of the language of the will, which is set out in the opinion of the Court. I am in entire accord with the statement therein of the general rules and tests to be observed in endeavoring to ascertain the intention of a testator; nor would I ever seek to control such intention when properly ascertained, by reference to artificial or technical rules of construction. Having satisfactorily ascertained the real intention of a testator, it must be respected and allowed to operate, unless in conflict with the settled policy of the law, or unless violence would thereby be done to the established legal interpretation of the language, in which the will is couched, and in such case the intention which the law presumes from the language used, must prevail.

The result of very careful consideration, both before and since the decision of this case, is to convince me that the testator did not intend that the unexpended income which accumulated before his daughter reached eighteen should belong absolutely to her, but that he designed it should form a part of " *the whole amount of said trust-funds and property* " which he directed should go to her children at her death, or in default of children or issue, to his two sisters, and this conclusion, which I deduce from the language of the will, and from a consideration of the peculiar

situation of the testator, and the relation subsisting between
him, and the declared objects of his bounty, is, in my
judgment, the only one which accords with the settled legal
construction and effect of the language in which he dealt
with this bequest. It is true, there is here no express di-
rection for the investment or accumulation of the unused
income, and its addition to the *corpus* of the estate, but it is
conceded by my brothers that such effective direction may
arise by implication, and I think it is clearly implied in this
case.

The testator was a widower at the date of · his will, and at
the time of his death in 1882. He left no issue, other than
one daughter, then seven years of age, who has since mar-
ried. Until she reached eighteen, he limited the applica-
tion of the income derived from the $100,000 bequeathed
to his trustees, to such sums as should be necessary to the
support, maintenance, and education of his daughter.
There was no bequest of the principal sum to his daugh-
ter. That bequest was to the trustees. The bequest of
income up to eighteen was to the trustees also, and not to
the daughter. The only title to, or property in, the income
prior to eighteen, which she could acquire, was through
the discretion of the trustees in creating such title or right
of property, by its application to her use. It can scarcely
be supposed that he contemplated any very considerable
part of the income of $100,000 would be required for the
purposes named, at least before she reached fifteen, and if
so, he must have contemplated during these seven or eight
years an accumulation of not less than $10,000 to $15,000.
It is equally unreasonable to suppose that as a business
man, accustomed to dealing with large sums, he designed
this surplus income to lie idle and uninvested until she
reached eighteen, and by such annual investment and rein-
vestment, these accretions would be still further swelled.
Neither the trustees, nor the Court, which in 1883 assumed
jurisdiction of the trust, could have supposed he so designed,
for under the direction of the Court the trustees did accu-

mulate and invest the unused income which now amounts
to $35,000. They did not pay over this unexpended in-
come to the testamentary guardian who duly qualified as
such, as the same accrued, nor to the daughter herself on
reaching eighteen, as would have been the natural and reg-
ular course if it in fact belonged to her absolutely. On the
contrary, when she reached eighteen, an audit was stated
and ratified by the Court, in which this $35,000, which had
been accumulated, together with the $100,000, was retained
by the trustees, as part of " the trust-funds and property."
It is, of course, unnecessary to say that I am not to be under-
stood as meaning that any of these things can affect Mrs.
Gill's right to this income, if such right would otherwise
exist, and they are referred to only to show the history of
these accumulations as consistently dealt with by the
trustee, by the Court under whose direction he acted, and
by the guardian (in this case the trustee) and to throw upon
the matter the light which is often shed with such luminous
effect by the cotemporaneous conduct of all the parties—
conduct, which in this case was acquiesced in by Mrs. Gill
for six years after reaching eighteen. Let us at the outset
apply to the question of the testator's intention, the test to
be found in a simple question which must have arisen in his
mind if he gave any consideration whatever to the ordinary
contingencies of life and fortune. Let us suppose that
his daughter had lived to seventeen years of age and had
then married an unworthy man, and had died under eighteen
without issue, the accumulations then amounting to $15,000.
As the law of Maryland then stood, and as it stood at the
time of his will and of his death, these accumulations, if
hers absolutely, would have gone to her husband, and not
to testator's sisters, although he provided that the income
which he did direct to be paid to her, should not be subject
to the control of any husband she might have. Can we be-
lieve that he intended by the language he employed, to
give her such an interest in these accumulations as would
permit such a result? And with what disposition would a

Court approach the consideration of this will, if the right to these accumulations were asserted by a husband under the circumstances above supposed, instead of by the wife herself, as in this case? With mere results the law has no concern. If the testator's intention, legally ascertained, will now sustain the claim of the daughter, it would equally sustain the claim of her husband under the circumstances I have supposed, and if under those circumstances we would deny the claim of her husband, we cannot now admit the claim of his wife. Let us now examine the language of this will and see what warrant it affords for the view of this matter which for sixteen years was taken by all the parties, and which to me still appears to be the correct view.

It is first to be observed, that after limiting the application of income up to eighteen, in the discretion of the trustees, the testator says, " and *thereafter* to pay the net amount of said rents and income unto my said daughter for and during her natural life," &c. To my mind it is clear that the use of the word " *thereafter* " limits the effect of that clause to the rents and income thereafter accruing, and excludes from its operation the rents and income which had theretofore accrued, not only because this is the simple and natural effect to be given to the word " *thereafter,*" in such connection, *even if it stood alone*, but because it does not stand alone and its use is explained and made clear by the subsequent words " for and during her natural life," which should be read by transposition as if they immediately followed the word "thereafter." This, I think, would make clearer to the eye and ear, but no clearer to the mental vision, what I regard as the true meaning of the testator. If this be not so, and if the true construction be to include in the direction to pay to her the rents and income which had been theretofore accumulated, then the effect of the words, " for and during her natural life," must either be to limit her to a life-estate in these previously accrued rents, which would be wholly inconsistent with the intention attributed to the testator by the Court, or they must be held

to have no effect upon the character of the interest she is to take in the accumulations, though the clause in which they are found is invoked to support her claim to an absolute estate.    It is objected in the opinion of the Court that " to accumulate the unused income now under consideration, and invest it for the benefit of the daughter for life with remainder to her successors in the title to the trust-fund, would result in making her father's will give to her an absolute estate in part of the income of the trust-property, and only a life-estate in the rest of it." Whether her father's will did give her such an estate, is the very question and the only question before the Court.  My brothers find nothing in the will indicating such intention on the testator's part, while to my mind the indications are ample and I regard the anomalous results which I have attempted to show would follow logically from the construction placed by the Court upon the direction to pay to the daughter, as lending much strength to my own construction.

Moreover the subsequent language of the testator, when he comes to provide for the children of his daughter, is, I think, consistent with the view here taken, and inconsistent with that taken by the Court.   To her children, or in default of children, to his sisters, he bequeaths not, " the said sum of $100,000 ;" not, " the *corpus* of the fund which I have bequeathed to my trustees for my daughter ;" but, " the whole amount of said trust-funds and property ;" a general, indefinite, and vague description, entirely proper to express an undetermined, and indeterminate, sum or quantity *as that of necessity was*, but wholly inappropriate in fact, and inadequate in legal terminology, to describe the fixed and definite sum of $100,000, which the Court holds he thereby intended to bequeath to his daughter's children.

The view which I take appears to me to be satisfactorily sustained by authority.

In *Hanson* v. *Graham*, 6 Vesey, 238, the testator gave directly to his three grand-children £500 apiece, and directed that the interest should be laid out at the discretion of his

executors and trustees for the benefit of his said grand-children, till they should attain twenty-one.   One of these grand-children died when nine years of age, and the question was whether her legacy vested immediately, or only on reaching twenty-one, and the Master of the Rolls held it vested immediately, *because by that will it was clear the whole interest was given ; but that it would have been otherwise*, if only maintenance had been given, and that a direction for maintenance has not the same effect in favor of vesting as giving interest, "upon this principle, that nothing more than a maintenance can be called for ; what can be shown to be necessary for maintenance, however large the interest may be, and therefore what is not taken out of the fund for maintenance, *must follow the fate of the principal whatever that may be*," and this case has been frequently cited with approval in the Courts of this country.

In *Costabadie* v. *Costabadie*, 6 Hare, 414, where testator's wife was to receive the income of his estate for the use of herself and her children for her life, in her discretion, the Vice-Chancellor said : "The testator may limit and circumscribe the interests which he bequeathes to his children, as he may think proper, and the Court cannot enlarge the interests which he has given.   Where a proper and honest discretion is exercised, *the legatee takes all that the testator gave, or intended he should have.   That is the measure of the legacy.*"   This case was cited with approval by the Supreme Court of the U. S., in *Colton* v. *Colton*, 127 U. S. 321, and the principle announced by it, as well as by the case of *Hanson* v. *Graham*, 6 Vesey, *supra*, has been approved by this Court in *Pole* v. *Pietsch*, 61 Md. 570.   It is the principle which in my opinion should control the disposition of this case.   It has been applied by a number of the Courts of last resort in this country in cases very similar to the present.

In *Huber's Appeal*, 80 Pa. St. 348, the testator, Fredk. Gaul, bequeathed one-eighth of his estate to his son Jacob for life, and after his death to his children equally, "provided that Jacob's share should remain in the hands of his

executors as trustees, the income during his life to be paid
to him, or applied by them at their option for his support
so that the same shall not be liable for his debts." Upon
Jacob's death, his administrator filed a petition for an ac-
count from the executors of Fredk. Gaul of Jacob's trust-
estate. The executors demurred, and it will not be inappro ·
priate to quote the language of their demurrer, which very
quaintly but very tersely and accurately states the legal prin-
ciple on which they relied, taken from *Hanson* v. *Graham :*
" These defendants demur to the right of said Huber to ask
any account of them, inasmuch as the said Jacob Gaul left
no estate to be administered, the whole of his estate under
the will and the intestate law, *and all accretions thereof, be-
ing the fruit of the tree from which they sprung, follow and
belong to the tree.*" The Court below held that the accumu-
lations of the income of Jacob's fund, which had not been
applied for him, did not pass to the administrator and this
judgment was affirmed on appeal, the Court saying : " The
extent and character of a devisee's estate depend on the
qualities stamped on it, and the powers conferred over it,
by the testator, and not alone on the parties in whom the
title is formally vested. Here the trustees in providing
for Jacob's support were to exercise a discretion. Only
when they should pay it to him, was he to have title to the
income. The administrator could receive it only on the
theory that Jacob owned it."

In *Ellingwood* v. *Beare*, 59 Howard's Prac. Rep. 503, the
testator gave $10,000 in trust to invest the same and apply
the interest, or so much thereof as should be necessary for
the support and maintenance of his daughter, or in the trus-
tee's discretion to pay her the whole interest annually, and
at her decease he gave " the $10,000 to her children then
living," and in default of issue, over. She died without
issue, the income was more than sufficient for her support,
and several thousand dollars had accumulated in the trus-
tee's hands at her death. It was held that the $10,000
should carry with it to the legatees in remainder, the interest

or income which it had earned, and which had not been applied to the daughter's maintenance ; and that the testator so intended, though there was no express direction for accumulation for that purpose.

In *Clement's Appeal*, 49 Conn. 519, a fund was bequeathed in trust to pay over the income at the discretion of the trustee to the testator's son, Harry, for life, for the support of his family, and on his death to pay over the same in equal portions to his children. The question was, as between a creditor of Harry and his children, who took the unapplied and accumulated income. It was held that the children took it, and that the word " same " manifestly included not only the body of the trust fund, but also any unexpended income, though there was no direction for accumulation. These cases will suffice to show the manner in which analogous cases have been decided by some American Courts of high reputation, and to relieve me from the fault of dissent upon fanciful or trifling grounds.

I agree with my brothers that *Milligan's case*, in 74 Md., is distinguishable from the present case in the express direction to accumulate till Milligan reached twenty-two and *then* to invest in trust for him for life, and after his death to his children, but I do not agree with them that there is anything in *Fairfax* v. *Brown*, 60 Md., which is opposed to the conclusion I have reached.

In that case there was no question as to the estate which Harriet took, but simply whether it was vested or contingent. Here the question is not as to vesting, but as to what the estate was, which vested ; that is to say, whether the estate which vested in the unapplied income was a life-estate only on the ground that the testator's will make it a part of the *corpus* in which he gave her only a life-estate ; or whether it was an absolute estate, such as the will did give her in the income actually applied or paid her, and which it would have given her in the whole income if that in the discretion of the trustees, or of the Court had been applied or paid to her. I agree that the same rules of construction which de-

termine the quality of an estate, whether for life or in fee, are equally applicable to estates placed in trust, and to those which are not, but this expression of the Court, to be found in 60 Md., must be taken with the qualification thereto annexed, " except so far as the creation (the character and purposes) of the trust may throw light upon the intention of the testator ;" and I have already sought to show how in my opinion the light thus derived sustains the views I have expressed.

I think the *pro forma* decree should have been reversed, and the petition dismissed.

(Filed May 8th, 1899).