## VAN WART v. JONES et al.

(Circuit Court of Appeals, Fourth Circuit. January 11, 1924.)

### No. 2117.

1. **Wills ☞684(7)—Minor legatee of trust fund held entitled to income during minority.**

A will left a fund in trust, the income to be paid to a daughter of testator during her lifetime, the fund then to vest in and become the property of her child or children, the trustees, however, to hold the share of any child until such child was 21 years old. The daughter died after the testator leaving one infant daughter. *Held,* that such infant was entitled to the income from the fund until she reached the age of 21 and became entitled to the corpus.

2. **Wills ☞684(7)—Minor beneficiary entitled to income, unless otherwise expressly provided.**

It is the general rule that, where a trust in property is created for the benefit of one during minority, the beneficiary is entitled to the income therefrom during such period, in the absence of express direction that the income be retained and accumulated.

3. **Guardian and ward ☞168—Infants ☞27—Guardian of minor held entitled to receive income from foreign trust estate.**

In the absence of any provision on the subject in the will, a trustee cannot pay income to a minor without the sanction of the court, and under Barnes' Code W. Va. 1923, c. 84, §§ 3, 6, where trustees under a will hold a trust fund, the income from which is to be paid to a minor, who is a resident of another state, on petition of a guardian duly appointed in the state of the minor's residence, the court should direct the trustees to pay over the income to such guardian, especially where he is the father of the minor and an entirely suitable person.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Suit in equity by Catherine Llewellyn Van Wart, an infant, by her next friend, Roy McLean Van Wart, against James Ellwood Jones and Isaac T. Mann, executors and trustees under the will of Jenkin Jones, deceased. Decree for defendants, and complainant appeals. Reversed.

Albert W. Reynolds, of Princeton, W. Va. (Reynolds & Reynolds, of Princeton, W. Va., on the brief), for appellant.

Barnes Gillespie, of Tazewell, Va. (Greever & Gillespie, of Tazewell, Va., on the brief), for appellees.

Before WADDILL, Circuit Judge, and WATKINS and WEBB, District Judges.

WATKINS, District Judge. The appeal in this case involves a construction of certain portions of the last will and testament of Jenkin Jones, who was at the time of his death a citizen and resident of Mercer county, W. Va. Two questions are involved: First, whether the income, from the trust fund created in behalf of the plaintiff appellant shall be held and accumulated until she is 21 years of age; and, second, if she be entitled to the immediate benefit thereof, whether it shall be administered for her benefit by the trustees or by them paid over to

her guardian. A somewhat extended statement will be necessary to present the facts applicable to both these questions.

[1] The testator was the owner of a large estate, including, among other things, a large amount of stock in the Pocahontas Consolidated Collieries Company. By his last will and testament dated August 24, 1915, and presented for probate on the 26th day of December, 1916, after providing for a limited amount of specific legacies, he devised and bequeathed the bulk of the estate to his son James Ellwood Jones, his daughter May Llewellyn Van Wart, and his granddaughter Elizabeth Bowen Jones, with limitations over to the issue of these beneficiaries in the event of their having predeceased the testator, and with alternative further limitations in the event of their predeceasing him without issue. All three of the beneficiaries survived the testator. After providing for the small specific legacies above referred to, and after making provisions for the granddaughter Elizabeth Bowen Jones, and after making certain provisions as to the use and disposition of his personal effects, his home, its furniture and furnishings, and a fund for the maintenance thereof, he divided the remainder of the estate into two parts, one of which was conveyed absolutely to the son, and the other to be held in trust for his daughter May Llewellyn Van Wart, the mother of the plaintiff appellant herein, to be managed and disposed of as follows:

"(a) All the rents, issues, profits and incomes of said other one-half of said remaining portion of my estate shall be collected by my executors and trustees and paid over as promptly as practicable after collection to my daughter, May Llewellyn Van Wart, and upon such payment shall forthwith become her sole, separate, and absolute property.

"(b) The principal of said other one-half of said remaining portion of my estate shall be held in trust until the death of my daughter, May Llewellyn Van Wart, and upon her death shall be disposed of as provided hereinafter in this my last will and testament."

The daughter, May Llewellyn Van Wart, survived the testator and thereafter died, leaving a husband, Roy McLean Van Wart, and leaving as her only issue a daughter, Catherine Llewellyn Van Wart, the appellant herein. The will provided that in the event of the death of the daughter, either before or subsequent to the death of the testator, leaving a husband and issue, there should be first carved out of her share of the estate and paid over to the husband the sum of $100,000, and that in the event of her death, leaving only one child, the said child should receive 60 per centum of the undistributed portion of the divisional share of the child's deceased parent. It was further provided, as to the divisional part of the estate provided for the daughter, after the payment of the legacy to the surviving husband, that the remainder of the divisional part—

"shall—vest at the time of my death [or alternatively in case of the daughter's survival of testator, then at her death] in and become the property of said issue—in equal shares per stirpes and not per capita so that each child of any deceased—daughter—living at the time of my death—shall share equally per stirpes and not per capita in the divisional parts respectively of my estate set aside above herein for my—daughter—with the strict provision, however, that my executors and trustees, their survivors or successors, shall hold in trust the shares of any of the children or lineal *descendants* of my—daughter

—who are living at the time of—her death or born thereafter and who are not at that time twenty-one years old until such child or lineal *descendant* shall have attained the full age of twenty-one years at which time or times, respectively, the share of each and every child or lineal *descendant* shall be paid over to him and become his sole, separate, and absolute property."

In providing for the upkeep of testator's home for the use of the son and daughter, the testator set aside a trust fund of $20,000, so much of the income therefrom as might be necessary to be expended for said purpose; it being clearly contemplated that the balance of the income was to be accumulated and added to the principal. The executors were also made trustees of the estate and were invested with broad and ample authority and discretion in the matter of sales, investments, and reinvestments, of the property included in the trust funds, including both "the principal of said trusts and any accumulated and undistributed income therefrom." In the case of the granddaughter, Elizabeth Bowen Jones, it is directed that the income from her share of the estate during her minority be paid over to her guardian. In case of other infant issue who might be entitled to distributive shares under the will, no direction whatever is made as to the expenditure of the income by the trustees to them or for their benefit during minority.

It is evident from a reading of the will that the testator had great confidence in the integrity and business ability of his son, James Ellwood Jones, and also that he desired his beneficiaries to co-operate in the continued joint ownership and operation of the properties which he held at the time of his death. It was specifically directed that the son during his lifetime should have—

"the sole and full power of voting any and all of the capital stock, common or preferred, of all securities belonging to and forming a part of the trust estates created by the will."

A careful review of the whole will discloses the fact that the testator's principal object was to provide an equitable distribution of his estate among his lineal descendants who were, and whom the law presumed to be, the natural objects of his bounty. The creation of trusts on behalf of his daughter and infant grandchildren was not for the purpose of depriving them of the income from or benefits of the trust estates created, but for the purpose of protecting these estates primarily for their benefit until the grandchildren should attain their majority. The will nowhere contains any express provision that the income from the trust property should be held and accumulated by the trustees until the period fixed for the distribution of the corpus. On the contrary, it was provided in the case of the granddaughter, Elizabeth Bowen Jones, who was living at the testator's death and at the time of the execution of the will, that the income should be specifically paid over to her guardian during her minority, and as to the daughter, May Llewellyn Van Wart, that the income should be paid over to her for her lifetime, only the corpus to be held by the trustees. At the death of this daughter, it was specifically provided that the portion of her share going to her infant daughter should vest in and become her property immediately upon Mrs. Van Wart's death. The only reference to an accumulation of income in the will is in the tenth paragraph,

wherein the trustees are directed as to the investment of the "principal of said trusts and any accumulated and undistributed income therefrom." This, however, is a general provision relating to all the trusts created by the will, and neither contains any direction to accumulate any specific income, nor is it accompanied by words which, by implication, would require the accumulation of the income to which the appellant is entitled under the will.

[2] The contention that such construction should be placed upon the will because of the provision for the father of appellant and of his duty to maintain and educate her is entirely aside from the question and without merit. It might have happened that the father should have predeceased his wife, in which case the legacy provided for him would have lapsed. In such event, under the contention of appellees, this granddaughter, for whom the testator displayed such solicitude, would have been left without any provision whatever upon the part of the testator for her education or even for the necessaries of life during her whole minority. The general rule is that where a trust in property is created for the benefit of one during minority the beneficiary is entitled to the income therefrom during such period, in the absence of express provision that the income should be retained and accumulated. Whitridge v. Williams, 71 Md. 105, 17 Atl. 938, 17 Am. St. Rep. 513; Hartman v. Pendleton, 96 Or. 503, 186 Pac. 572, 190 Pac. 339, 8 A. L. R. 904; Albright v. Albright, 91 N. C. 220; Bird's Estate, 2 Pars. Eq. Cas. (Pa.) 168; Burt v. Gill, 89 Md. 145, 42 Atl. 968, 43 Atl. 177; Cropper v. McLane, 6 App. D. C. 122.

[3] It having been determined that the appellant is entitled to receive the income from the trust fund created for her benefit during her minority, we proceed to an examination of the will to ascertain whether the trustees are authorized either in express terms or by necessary implication to expend this income for her benefit. Upon this point the will is entirely silent. The trustees are neither charged with the duty nor vested with the power to expend this income. The general rule is thus stated in Perry on Trusts, § 624:

"If a trustee holds in his hands a sum of money to be paid absolutely to an infant, he must not pay it to the infant, nor to his father, or other person without the sanction of the court. Furman v. Coe, 1 Caines' Cas. 96; Sparhawk v. Buell, 9 Vt. 41. Should he do so, he may be compelled to pay it again to the infant when he comes of age. Dagley v. Tolferry, 1 P. Wms. 285; Phillips v. Paget, 2 Atk. 80; Davis v. Austen, 3 Bro. Ch. 178; Lee v. Brown, 1 Ves. 369."

In this case no testamentary guardian was appointed to receive the income of the minor, and before the trustees could pay it over and be legally discharged therefor, the appointment of a general guardian became necessary. Appellant resides with her father, Dr. Roy McLean Van Wart, at New Orleans, in the state of Louisiana. On May 6, 1921, Dr. Van Wart was confirmed by the civil district court for the parish of Orleans as natural tutor of his said minor child, and the certificate shows that he took the oath as such and complied with all other requirements of the law. He was compelled to accept this tutorship under the laws of his state, and to file and have recorded an inventory, the recording of which serves as a general mortgage against

any immovable property which he may own.  The designation "tutor" is used under the laws of Louisiana, instead of "guardian," and its meaning as affecting this case is of the same identical import as "guardian."  The general rule is that, in the absence of statutory provisions, the guardian's authority is restricted to the limits of the state of his appointment.  An executor of the property of a testator in one domicile cannot legally pay over the funds coming into his hands in such state to a guardian residing in another state, except by express legal permission.  Such authority, however, is expressly conferred by the laws of West Virginia.  Barnes' Code of 1923, pp. 1700, 1701; sections 3 and 6 of chapter 84, Code of West Virginia.  These sections read as follows:

"Sec. 3.  *Transfer of Property of Nonresident Minor or Insane Person by Resident Guardian or Committee.*—When any minor or insane person, entitled to property or money in this state, resides out of it, on the petition of a guardian or committee, lawfully appointed or qualified in the state or country of his residence, the circuit court of the county in which the estate may be, may order the guardian or committee in this state, if there be one, to pay and deliver to such foreign guardian or committee, or his agent or attorney, all personal property and money in his hands, belonging to said ward or insane persons, and authorize such foreign guardian or committee to sue for, recover and receive all money or personal property which may belong to his ward or insane person, including the accruing rents of his real estate, in like manner as if he were appointed a guardian or committee of such ward or insane person in this state, and remove the same to the state or country in which the said foreign guardian or committee was appointed and qualified."

"Sec. 6.  *Transfer of Personalty in Hands of Trustee, Administrator or Executor.*—When any personal estate in this state is vested in a trustee resident therein, or who acts by virtue of a deed, will, or other instrument, recorded or probated therein, or when any administrator or executor in this state, has assets in his hands of a decedent who at the time of his death was domiciled in another state, and those having the beneficial interests in said estate or assets, are nonresidents of this state the circuit court of the county in which such trustee, administrator, or executor may reside, or in which such estate may be, may upon petition or bill in equity filed for that purpose, order such trustee or his personal representative, or such administrator or executor to pay, transfer and deliver such estate or assets, or any part thereof, to a nonresident trustee, administrator or executor, appointed by some court of record in the state in which such beneficiaries reside."

No question is made in the record as to the character, qualifications, responsibility, or suitability of Dr. Van Wart to act as guardian for his daughter, nor as to the propriety of the method by which the transfer of the property is sought.  The provisions of the will in his behalf indicate that Dr. Van Wart had both the confidence and esteem of the testator.  We must assume, therefore, in the absence of any suggestion to the contrary and in view also of the stringent provisions of the laws of Louisiana, that the estate of his ward will be properly administered by him for her benefit.  He is in a better position to judge of her necessities and is bound to her interests by natural ties of affection and concern beyond those expected of any other living person.  In the case of Lamar v. Micou, 112 U. S. 452, 5 Sup. Ct. 221, 28 L. Ed. 751, the court says:

"The preference due to the law of the ward's domicile, and the importance of a uniform administration of his whole estate, require that, as a general

rule, the management and investment of his property should be governed by the law of the state of his domicile, especially when he actually resides there, rather than by the law of any state in which a guardian may have been appointed or may have received some property of the ward. * * * The form of accounting, so far as concerns the remedy only, must indeed be *according to the law of the court in which relief is sought;* but the general rule by which the guardian is to be held responsible for the investment of the ward's property is the law of the place of the domicile of the ward. Bar, International Law, § 106 (Gillespie's translation), 438; Wharton, Conflict of Laws, § 259."

As stated above, the question of the duty of the father to maintain and educate his child is entirely aside from the question here involved. For a proper distribution of the funds coming into his hands he will be accountable to the court of his appointment. He can expend only so much of the funds as may be legal and proper. The court was in error in refusing the application to have the income from the ward's trust estate, as may come into the hands of the trustees transferred and paid over to her guardian or tutor.

Reversed.

WADDILL, Circuit Judge (concurring). I concur with the majority of the court that the decree of the District Court adjudicating the rights of the infant plaintiff adversely to her and dismissing the bill, should be reversed. But, instead of paying the infant's income to her guardian, to be transferred to the state of Louisiana, as contemplated in the opinion of the majority, my conclusion is that the equity cause should be retained on the docket of the District Court; the estate of the infant during minority, as well the income as the corpus thereof, to be held and administered by the executors and trustees of the will of the decedent, Jenkin Jones, by direction of and under the decrees and orders of that court; that tribunal to make such allowances from the income as shall be found necessary for the care, support, maintenance, and education of the infant plaintiff.