## ESTATE OF MADISON MEHAFFEY, IN TRUST.

### APPEAL BY W. C. SOLES ET AL. FROM THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued November 5, 1890—Decided January 5, 1891.

(a) A testator created certain spendthrift trusts; in some, directing that the income should be held for the beneficiary so that it should not be "liable to his debts, contracts or engagements;" in others, that it should not be liable for any "debts, contracts or engagements which they may make."

(b) After the death of the testator, a cestui que trust, entitled to income under both the forms of trust quoted, gave to a creditor an order on the trustee, for the payment of an indebtedness contracted by him prior to the death of the testator, which order the trustee declined to pay:

1. Though, by a literal construction, the words "may make" might be restricted to debts, contracts, or engagements of the cestui que trust made after the trust went into effect, yet, considering the several provisions of the will, the intent of the testator was to protect the income against past as well as future acts of the beneficiary.

2. At all events, it was only by virtue of the order on the trustee that the creditor claimed the right to have the income appropriated to the payment of his debt, and the order, if of any efficacy at all, was in the nature of an engagement of the cestui que trust made after the trust became operative.

3. An alternative provision, for the trustee to pay the income to such person or persons as the cestui que trust should authorize to receive it, was intended merely to recognize the right of the beneficiary to appoint an agent to receive for his use, not to authorize him to transfer to another his right to the use of the income.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 208 October Term 1890, Sup. Ct.; court below, No. 89 February Term 1890, O. C.

On February 20, 1890, W. F. Barclay presented his petition setting forth that he was a creditor of Madison Mehaffey, devisee under the will of Alexander Mehaffey, deceased; that Alexander Mehaffey died March 24, 1886, leaving a will dated October 20, 1882, duly admitted to probate; that James Evans, the trustee appointed by said will, had renounced, and W. C.

Statement of Facts.

Soles had been appointed trustee in his stead; that on December 19, 1887, said Madison Mehaffey, "in pursuance and performance of the right and power to him given by the terms of the said will, executed and delivered to petitioner" an order as follows:

.   "To James Evans, trustee under the last will and testament of Alexander Mehaffey, late of the county of Allegheny; Pay to W. F. Barclay, or order, two hundred and fifty dollars, out of the first moneys in your hands coming to me, to be applied on judgment No. 70 March Term 1883, in the Court of Common Pleas of Indiana county, confessed this 19th day of December, 1887.                          M. MEHAFFEY."

"Witness:

"JNO. R. WILSON."

The petition set out, further, the presentation of the foregoing order to W. C. Soles, trustee, and his refusal to pay it, although he had in his hands sufficient funds of the trust estate to do so; and prayed that he be directed to file an account.

A citation was thereupon awarded, to which the respondent made answer, averring, inter alia, that, under the terms of the will of Alexander Mehaffey, Madison Mehaffey had no power to transfer any interest in the trust estate; and, further, that he had notified the respondent not to pay any orders made by him, as he often signed papers when intoxicated that he ought not to sign.

The will of Alexander Mehaffey provided, inter alia, as follows:

"3. I give and devise to the said James Evans, his heirs and assigns, all that certain farm, situate in Loyalhanna township, in Westmoreland Co., Pa., containing about 285 acres (excepting and reserving, however, all the merchantable coal thereunder), . . . . . upon the following trusts and conditions, viz.: That he, the said James Evans, shall let and demise said farm, and receive the rents and income thereof and pay over the same to my son Madison Mehaffey, or to such person or persons as he may authorize to receive the same, or, at the option of said trustee, to permit him the said Madison Mehaffey to occupy and enjoy said farm, for and during the full term of his natural life, for his own separate use, so that the same shall not be in his power or liable to his debts, contracts or engagements; . . . .

and from and after the death of the said Madison Mehaffey, then to hold the said farm, exclusive of the coal as aforesaid, for the use of his wife Eliza, so long as she shall remain his widow, upon the same uses and trusts as hereinbefore stated, and without any liability for any debts or contracts she may make; and, from and after the marriage or death of the said Eliza Mehaffey, then to hold said farm, exclusive of the coal as aforesaid, to and for the only proper use and benefit of the heirs and legal representatives of the said Madison Mehaffey, their heirs and assigns forever."

" 5. The coal underlying my said farms in Allegheny and Westmoreland counties, and reserved as aforesaid, I hereby authorize and empower my executor to sell and dispose of, as soon after my death as in his best judgment full and fair prices can be got therefor; and the proceeds of sales so made by him, together with any moneys in his hands from my personal estate remaining after the payment of said debts, expenses, etc., shall be disposed of as follows, viz.:

" 1. Three thousand dollars ($3,000) shall be invested by him in good securities, and the interest thereon paid over annually to my son William, or to such person as he may authorize to receive the same, for and during the full term of the natural life of the said William Mehaffey, and without any liability for any debts, contracts or engagements which he may make; and, at his death, the principal sum so invested, shall be equally divided between my sons Charles and Madison, and my daughter Ann, or their legal representatives.

" 2. The balance of my personal estate and moneys received from sales of coal so made, remaining in my executor's hands, shall be divided into three equal parts, one part of which shall be paid over by him to my daughter Ann or her legal representatives.

" 3. The remaining two thirds thereof shall be held by my executor in trust, one half for the use of my son Charles, and one half for the use of my son Madison, for and during the full term of their natural lives, the interest accruing thereon to be paid over to them annually, or to such person or persons as they severally shall authorize to receive the same, without any liability for any debts, contracts or engagements which they may make; and, at the death of either of my said sons, the principal

sum so held for his use shall go to and be equally divided among his heirs and legal representatives."

The will made to other children of the testator similar devises and bequests, sufficiently indicated in the opinion of the Supreme Court.

Issue having been joined, a hearing was had, when it was shown that on January 23, 1888, W. C. Soles, trustee, had received from the executor of said will the sum of $2,736.28, of which Madison Mehaffey was entitled to receive the interest for life, under the fifth paragraph of the will. It was also shown that the indebtedness for which the order of December 19, 1887, was given, was incurred by Madison Mehaffey in 1877.

On September 4, 1890, after argument, the court, OVER, J., filed the following opinion:

The intention of the testator to protect the interest accruing on the trust fund, from liability for debts subsequently contracted by Madison Mehaffey, the cestui que trust, is clear. But the words used in the fifth paragraph of the will do not express an intention to exempt the interest from liability for past indebtedness. There is no apparent reason why he should exempt it from liability for future and not for past debts, and there is a strong presumption that he intended to protect the interest from liability for all indebtedness of the cestui que trust. But, if the language of the will be plain, we are not at liberty to conjecture as to his intention, but must follow it. The question in expounding a will is, not what the testator meant, but what is the meaning of his words: Hancock App., 112 Pa. 532; Ellis's App., 22 W. N. 135. What, then, is the meaning of the words of this will?

The testator provides that the interest in the trust fund is " to be paid to Madison Mehaffey, or to such person as he shall authorize to receive it, without any liability for any debts, contracts or engagements which he may make." This undoubtedly refers to future debts, contracts and engagements. It is evident the will was prepared with care; apt words have been used, and they should receive their usual and ordinary interpretation. In the preceding paragraphs, the devises are exempt from liability for debts of the devisees, without any

Arguments.

qualification; and, if the testator intended to so exempt the interest of this fund, he should have used similar language; and as he has not expressed his intention to so exempt it, it follows that the interest is liable for the past indebtedness of the cestui que trust.

If this fund had not been impressed with the trust, the order would have operated as an equitable assignment pro tanto of the interest subsequently accruing: Nesmith v. Drum, 8 W. & S. 9; Caldwell v. Hartupee, 70 Pa. 74; Ruple v. Bindley, 91 Pa. 296. And, as it is not impressed with the trust as to the debts for which this order was given, it follows logically that it operated as an assignment of the interest and should be paid.

The trustee paid some interest to the cestui que trust, after he had notice of the order. But, as it does not appear he knew that the trust fund was liable for the debts for which it was liable, the decree will be for the payment of the interest now in his hands and subsequently accruing.

—A final order was then entered decreeing that W. C. Soles, trustee of Madison Mehaffey, should pay to W. F. Barclay, petitioner, the sum of $250, with interest from December 19, 1887, and costs, out of any interest or income then in the hands of said trustee, or that thereafter might come into his hands, under the fifth paragraph of the said will, and belonging to said Madison Mehaffey. Thereupon, W. C. Soles, trustee, and Madison Mehaffey took this appeal, assigning said decree for error.

*Mr. John D. Shaffer* (with him *Mr. T. C. Jones*), for the appellants.

Counsel cited: Stambaugh's Est., 135 Pa. 585; Thackara v. Mintzer, 100 Pa. 154; Barnett's App., 46 Pa. 400; Philadelphia Trust Co. v. Guillou, 100 Pa. 258; Hitchcock v. Hitchcock, 35 Pa. 393.

*Mr. Wm. M. Watson*, for the appellee.

Counsel cited; Keyser v. Mitchell, 67 Pa. 473; Hancock's App., 112 Pa. 532; Ellis's App., 22 W. N. 135; Schouler on Wills, 476; Craige's App., 126 Pa. 231; Girard Ins. Co. v. Chambers, 46 Pa. 485; Rich v. Keyser, 54 Pa. 86; Nesmith

v. Drum, 8 W. & S. 9; Ruple v. Bindley, 91 Pa. 296; Caldwell v. Hartupee, 70 Pa. 74.

OPINION, MR. JUSTICE STERRETT:

It is well settled by an unbroken line of cases, commencing with Fisher v. Taylor, 2 R. 33, that, by using apt words, a parent may create a special trust for the benefit of an unfortunate or a spendthrift child, without exposing his bounty to liability for any debts, contracts, or engagements of the beneficiary.

In the third item of his will, the testator, Alexander Mehaffey, created such a trust for the benefit of his son Madison, one of the appellants, by devise to James Evans, Esq., in trust to lease the farm devised, "receive the rents and income thereof, and pay over the same to my son Madison Mehaffey, or to such persons as he may authorize to receive the same, or, at the option of the said trustee, to permit the said Madison Mehaffey to occupy and enjoy said farm, for and during the full term of his natural life, for his own separate use, so that the same shall not be in his power, or liable to his debts, contracts, or engagements," etc.; and, after the death of the beneficiary, to hold said farm for the use of his wife, so long as she shall remain his widow, upon the same trusts, "without any liability for any debts or contracts she may make;" and, after the death or marriage of said widow, "to and for the only proper use and benefit of the heirs and legal representatives of said Madison Mehaffey, their heirs and assigns forever."

In the second and fourth items of the will, similar special trusts are in like manner created in favor of the other sons, and the wife of one of them. These trusts, respectively, are expressed in substantially the same language as those above quoted. In the second item, the word "direct" is used instead of the word "authorize;" and the trust for the benefit of the son's wife is expressed to be without any liability for "any debts which she may contract," while in that above quoted the words employed are "any debts or contracts she may make."

In the fifth item of his will, the testator disposes of the residue of his personal estate and the proceeds of coal which his executor is directed to sell, as follows:

1. He directs $3,000 thereof to be invested by the trustee,

and the interest thereon paid over annually to his son William, " or to such person as he may authorize to receive the same " for and during his natural life; "and without any liability for any debts, contracts, or engagements which he may make."

2. One third of the residue to be given to his daughter.

3. He directs that the remaining two thirds shall be held in trust for his sons Charles and Madison, one half for each, during their lives, "the interest accruing thereon to be paid over to them, annually, or to such person or persons as they shall severally authorize to receive the same, without any liability for any debts, contracts, or engagements which they may make."

The testator died in 1886, and on December 19, 1887, the spendthrift cestui que trust gave an order on the trustee, Mr. Evans, in favor of W. F. Barclay, for $250, payable out of the first trust income, and to be applied to Barclay's judgment entered in 1883, and revived by confession on the day the order was given. Mr. Evans, the trustee named in the will, having declined to serve, the appellant William C. Soles was appointed in his stead; but, although he had notice of the order, he refused to pay it, not only for the reason that he had no funds, but mainly because the cestui que trust had notified him, after his appointment, not to recognize any order given by him, as he might and did sign papers when he was intoxicated which he should not sign.

The decree of the court is virtually grounded on the order to pay on account of the judgment debt contracted before the testator's death; and it was made because the learned judge was of opinion that the income arising from the trust created by the fifth item of the will, was unprotected as against previously contracted debts of the cestui que trust; that, while said income, according to the expressed terms of the will, was "without any liability for any debts, contracts, or engagements which he (the cestui que trust) may make " after the death of his father, it was not exempt from liability for such as were made before.

Giving the words "may make" a strictly literal construction, the exemption from liability may be restricted to debts, contracts, or engagements of the cestui que trust made after the trust went into operation; but we are not satisfied that the learned court was right in its conclusion. There is no appar-

ent reason why the testator should exempt the income from liability for future, and not for past debts, contracts, or engagements of his son.   On the contrary, there is a strong presumption that he intended to protect his bounty from liability for any debt, contract, or engagement, whether made before or after the trust went into operation.   It is difficult to consider the several provisions of the will without coming to the conclusion that such was testator's intention; in other words, that he intended, in each and every case, to create a special trust that would protect his bounty against past as well as future acts of the respective beneficiaries.   But, whether that be the proper construction of the trust or not, it cannot be doubted that the income accruing therefrom is protected from liability for or by reason of any future act, debt, or engagement of the cestui que trust.   If that be so, the decree, which is founded on the order, was unwarranted and erroneous, because the order, if it have any efficacy at all, is in the nature of a contract or engagement made since the trust became operative.   It was only by virtue of the order on the trustee, that the petitioner claimed the right to have the income appropriated to the payment of his judgment.   The execution of the decree, if permitted, would operate, substantially, as a specific enforcement of the order.

The alternative provision, to pay the interest to such person or persons as the cestui que trust shall authorize to receive the same, was intended merely as a recognition of his right to appoint an agent to receive the income to his use, and not to enable him to transfer his right thereto to another, or otherwise dispose of the income in anticipation of payment to himself. To hold that he could do that, would be to expose the testator's bounty to any debt or engagement the cestui que trust may see fit to make.

As was said in Stambaugh's Estate, 135 Pa. 597, when we come to consider a will and interpret its meaning, " we must do so in the light of all the circumstances by which the testator was surrounded when he made it, and by which he was probably influenced."   Testing the will before us by that rule, we are satisfied that the testator did not intend to expose the bounty, provided for an improvident and spendthrift son, to

liability for such a claim as the one on which the decree in this case is based.

Decree reversed and petition dismissed, at the costs of the appellee.

Argued November 5, 1890—Decided January 5, 1891.