JACOB LEVI ET EL. *vs.* ISAAC BERGMAN ET AL. TRUSTEES.

*Trusts—Discretion of Trustee to Make Extra Allowances When Necessary for the Support of a Cestui que Trust—Rights of Creditors of a Cestui que Trust.*

When a trustee is authorized by a will to make an extra allowance when necessary in his opinion for the support of a *cestui que trust*, to whom no absolute right to demand the same is given, it is not a proper exercise of the discretion to make an extra allowance in favor of a commercial creditor of a *cestui que trust*.

An estate was devised to trustees with directions to divide the net income thereof equally among the six children of the testatrix. A subsequent clause of the will directed the trustees "to pay to each of my three youngest children, Levi, Samuel and Bella, the sum of $500 per annum before making any distribution * * * so long as and whenever such extra allowance may in the judgment of my said trustees be necessary for the proper support of those young children or any one or more of them." Samuel became indebted to one J. C. in the course of a business carried on by him, and the trustees proposed to pay over to J. C., in pursuance of the above mentioned power, a part of the income of the estate in settlement of the debt before making distribution among the other children. *Held,* that the trustees were empowered to make an extra allowance only when necessary for the support of one of the persons named ; that the payment of Samuel's business debts was not necessary for his support within the meaning of the will and that such application of the income was not a proper exercise of the discretion vested in the trustees.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*S. J. Harman* (with whom was *Jos. N. Ulman* on the brief) for the appellants.

A will speaks from the death of the testator, and not from its date, unless the language, by a fair construction, indicates the contrary intention. An alimentary stipend allowable in the discretion of a trustee *prima facie* extends over the period of adolescence only, and is not intended to be continued beyond the time when the beneficiary has reached his majority. *Walton's Lessees* v. *White*, 5 Md. 297; *Conner* v. *Ogle*, 4 Md. Ch. 425; *Badham* v. *Mee*, 1 R. & My., 631.

At the time of the testatrix' death there were no "young children," in the usual and ordinary acceptation of that term. The whole clause falls to the ground, then, for the very proper reason that it was the intention of the testator that it should fall to the ground. The "young children" had grown up, and there no longer existed any reason to discriminate in their favor. While a new will or a codicil would most effectually have indicated this altered intention, we contend that a new condition had arisen, essentially so different from that existing at the time of the execution of the will, that the testatrix believed, and as a reasonable person had a right to believe, that merely leaving that will unaltered was sufficient to indicate the fact that in this particular, at least, it was to be of no force or effect. 1 *Jarman on Wills*, 291.

In the exercise of a discretionary power conferred upon trustees, a Court of Equity has no right to interfere provided it is honestly and reasonably exercised. They must, however, act in good faith, having a proper regard to the wishes of the testator and the nature and character of trust reposed in them.

A will devising property in trust to pay such part of the proceeds to another as in the discretion of the trustee he may think best, does not vest in the beneficiary such an estate as may be subjected to the payment of his debts. *Pole* v. *Pietsch*

*& Thiede* 61 Md. 570–2 ; *Note to Day* v. *Slaughter* 13 L. A., 213, and cases there cited.

We do not stand for the proposition that the burden of proof to show good faith and a fair exercise of the discretion rests upon the trustees. But we do say that the circumstances of this case, the delay in rendering an account, the very apparent after-thought in regard to the exercise of the discretion, the evidence which shows that Samuel Bergman is at present earning his living as a clerk, the fact that the trustees are on unfriendly terms with the appellants—all these facts, we say, have shifted the burden of the evidence upon the trustees. To meet it, they present merely their own interested evidence.

If the trustees do not honestly believe Samuel Bergman to be in need of this differential payment of $500.00 per annum for his support, then, under the terms of the will, they have no right to pay it to him. On the other hand, if they do believe him to be in need of it, equally under the terms of the will, they have no right to pay it to anyone else.

Your appellants are entitled to one-fifth of Henrietta Bergman's estate. And the trustees have, by their own testimony, estopped themselves in logic to deny that right. They cannot be permitted to blow hot and cold, to say in one breath that Samuel Bergman is in need of support, and in the next that they propose to support him by paying the debts of a creditor who has never harassed nor molested him. It is bad logic and it is not good faith.

*W. Cabell Bruce* and *John W. Marshall* (with whom was *D. K. E. Fisher* on the brief), for the appellees.

There is nothing in this case to support a claim that the trustees are not exercising their discretion under the sixth clause of the will in favor of Samuel honestly and reasonably, and it is the law of this State that in the exercise of a discretionary power conferred upon a trustee a Court of Equity has no right to interfere, provided it is honestly and reasonably exercised. *Pole* v. *Pietsch*, 61 Md. 572 ; *Milligan* v. *Pleasants*, 74 Md. 14.

If trustees exercise their discretionary powers in good faith, and without fraud or collusion, the Court cannot review or control their discretion. *Perry on Trusts*, section 511, note 5.

That Samuel is lacking in mentality, incompetent and shiftless, and a proper object for the exercise of the discretion vested in the trustees is evidenced by the testimony.

The point is made in the bill that the testatrix intended to give the trustees the right in their discretion to award the extra allowance in Samuel's behalf only during his minority. There is nothing in the point. Levi, one of the testatrix's three youngest children, in favor of any one or all of whom the discretion could be exercised, was twenty-five years of age at the date of the execution of the will, October 23, 1882. Samuel, himself, was at that time in his twentieth year.

PAGE, J., delivered the opinion of the Court.

The testatrix, Henrietta Bergman, devised and bequeathed all her property, except two small amounts, to her two sons Michael Bergman and Isaac Bergman in trust for all her six children, the income of the estate to be paid them equally during their respective lives, and if any should die leaving children, the share to which the parent would have been entitled to be paid to them. After the death of the last survivor the property was to descend and be vested in their descendants *per stirpes*, and if there were no descendants, then to the "heirs at law of herself and her husband and Philip Bergman as tenant in common.". By the sixth paragraph, the testatrix made additional provision for three of her children, which will be more particularly referred to hereafter.

The testatrix made and executed her will in October, 1882, and died in 1895.

Of her children who were living when the will was executed, two of the sons, Michael Bergman and Levi Bergman, died in the lifetime of their mother, unmarried, intestate and without leaving descendants. On the death of the testatrix, letters of administration were granted to Isaac Bergman, the surviving executor named in the will, who later on distributed, as

appears by his second and final account, the sum of $4,568.56, and transferred the same to Isaac Bergman and Meyer Bergman, trustees under the will; the last named having succeeded Michael Bergman in the trust under the fourth clause of the will. There appears in the record a "memorandum" of receipts and expenditures made out and filed by the trustees for the years 1896 and 1897. The receipts for these two years amount to $1,524.85 and the expenditures $1,265.58, leaving a balance of income for distribution under that account of $259.25, and this amount, the trustees state in the "memorandum," they "propose, pursuant to the power conferred upon them by the will to pay over for the benefit of Samuel Bergman to the executors of Joseph Cohn in reduction of the debt from said Samuel Bergman to the said Joseph Cohn, &c." The indebtedness thus referred to was created by Samuel in the conduct of a merchandizing business in Wytheville, Virginia, and the consideration for it, was goods sold to him and bills guaranteed for him, by Mr. Cohn.

At the time of the execution of the will Levi was about twenty-five years of age, Samuel about nineteen and Bella about seventeen, so that at her death Samuel and Bella were respectfully about thirty-two and thirty years of age.

The bill, which was filed by Bella and her husband Jacob Levi, charges that the proposed payment by the trustees, to Joseph Cohn's estate is not warranted or within the power of the trustees under a proper construction of the sixth paragraph of the will. The trustees in their answer claim that the trustees have the right and power under that paragraph, whenever in their judgment it may be necessary for the support of Samuel, "to pay to or *on behalf* of said Samuel the sum of five hundred dollars, before making distribution of the income from the trust estate among all the children of said Henrietta Bergman."

The Court below sustained the contention of the appellees and among other things decreed that the trustees might "in the exercise of the discretion vested in them by the sixth clause of the will, pay over annually the sum of $500, before

making any distribution of the income, &c., to the estate of said Cohn, until by said payments said trustees shall have extinguished the debt, &c., and thereafter may continue said payments as aforesaid to the said Samuel Bergman directly." From that portion of the decree the appellants have appealed.

This appeal therefore imposes upon us the duty of construing the sixth paragraph of the will, and of determining whether the proposed application of the balance of the net income, remaining after the expenditures have been deducted from the gross income is a proper exercise of the discretion vested in the trustees by that section.

The sixth paragraph of the will is as follows : "I hereby authorize and direct my said trustees to pay to each of my three youngest children, Levi, Samuel and Bella, the sum of $500 per annum before making any distribution among all my children, as hereinbefore provided of the net income of my estate so long as and whenever such extra allowance may in the judgment of my said trustees, be necessary for the proper support of those young children or any one, or more of them."

Now it must be conceded that if the trustees act in the attempted exercise of their discretion within the limitations imposed upon them by the will itself, a Court of Equity cannot interfere, provided such discretion is reasonably and honestly exercised. But trustees cannot under the cover of discretionary power, disregard the wishes of the testator, as derived from the terms of the will, and from the nature and character of the trust reposed in them. *Pole* v.*Pietsch,* 61 Md.'572.

We must therefore seach the entire will, to ascertain, if possible, what were the objects of the testatrix in conferring such an extraordinary power. And we may also consider in connection with the language of the document itself, "the peculiar situation of the testatrix, and other circumstances that existed, in order that we may be enlightened in regard to the intent, that controlled her." *Henderson* v. *Henderson,* 64 Md. 189. "Without knowing how the testator was situated the meaning and application of his words would oftentimes be incomprehensible." *Frick* v. *Frick,* 82 Md. 222.

It is clear from the provisions of the will that the testatrix did not intend that invidious distinctions should be created among her several children. By the third paragraph, almost her entire estate is appropriated for their use and benefit in equal proportions until the last survivor of them shall have died; and when that period shall have arrived, the estate is to devolve upon their descendants, without favor with respect to any of them. But it is also beyond question, we think, not only from the terms of the will but also from the testimony that appears in the record, that there were three of her children whom she regarded with especial solicitude. These were her three youngest, Levi, Samuel and Bella. Levi at the time she made the will, was twenty-five years of age and Samuel twenty. Neither of these two had ever exhibited any capacity for earning money, and the subsequent history of both of them since that date will fully justify the opinion she may have acquired, that on account of their want of capacity and general thriftlessness, they would often need a helping hand to rescue them from absolute want. Bella was her youngest child and only seventeen years of age, and with respect to her, the testatrix not only provided as she did for Levi and Samuel, but by the seventh paragraph of her will, directed her trustees to pay to her, in the event of her marriage the sum of $5,000 " as a marriage outfit." These three were her " youngest " children; to her they were still " young children," and she so refers to them; two of them were incapable, improvident and thriftless; the other was a young girl, without much opportunity for making for herself a sufficient support, by her own labor. The estate was small, and after taxes, charges and expenses had been paid, the share of each child out of the income would be no great amount. It is hardly reasonable to suppose that she was then able to forsee that either of these sons in despair of ever being prosperous, would take his own life, but she may very well have anticipated with respect to either one of them, that, driven by the press of indebtedness, he would one day assign all he had to creditors and his resources would become so reduced as

that he would need substantial aid to meet the necessary expenses for his support.    Bearing these considerations in mind, it may be easily seen why she inserted the sixth paragraph in her will.    By that she authorized and directed her trustees to make a special and extra allowance to either or all of these children whenever in their judgment it was necessary for their proper support.    The " extra allowance " was intended for necessary support and the trustees have no power to make it for any other purpose.    The proof shows that Samuel was engaged in business, which had proved unprofitable, so that he was compelled to make an assignment of all his property for the benefit of his creditors, one of whom was his brother-in-law, Joseph Cohn, who, by the terms of the assignment, was made a preferred creditor.    How the payment of that debt can be regarded as contributing to the support of Samuel within the meaning of the paragraph, it is difficult to perceive. It would indeed relieve him from the weight of obligation under which he rested, but there is nothing we can find either in the terms of the will or in the intentions of the testatrix that authorizes the trustees to take anything from the common fund to which all the children were equally entitled for that purpose.    The testatrix looked forward to the possibility of there being a time, when this extra allowance would be necessary for their physical comfort, and did not intend to alter the general scheme of her will, which was to devote the income of her estate, equally, to the uses of all her children by granting power to the trustees to make extra allowances to pay losses in business.    In fact it would seem that what she had in view when she inserted this paragraph in her will, with respect to Samuel and Levi was to protect them in some measure from their thriftlessness and incapacity in business, so that when it had failed, there would still remain some provision for their " support."    Nor would the trustees, under this construction of the powers granted them by the will, be authorized to use the income or any part of it of the estate, so that they might put themselves in a position to exercise the discretion, vested in them, thereafter directly and immediately in

favor of Samuel.    They may exercise their discretion in deter-
mining when the necessity for contributing to the support of
Samuel exists, but they cannot in the pretended exercise of
that discretion pay off and discharge his commercial obliga-
tions.

It is clear we think that when this will is read in the light
of the surrounding circumstances, that the sixth paragraph
was inserted for the personal benefit of the three beneficiaries
therein named.    It grants to them no estate and therefore
vests them with no right that can be the subject of a convey-
ance.    What is granted amounts to nothing more than a
power to the trustees to make an extra allowance out of the
income, before distribution among all the testatrix' children
and pay it over to the persons named, whenever in the judg-
ment of the trustees, it is necessary to their "support."    The
case is analogous to that where the trustees are required to
"support" the *cestui que trust*, in which it was held that the
intent to withhold the estate from the claim of creditors may
be implied, and the income will be applicable only to his sup-
port.    *Baker* v. *Brown*, 146 Mass. 369; *Slattery* v. *Wason*,
151 Mass. 266; *Mehaffey's estate*, 139 Pa. 276; *Twopeny* v.
*Peyton*, 10 Sim. 487.

These cases which we cite for illustration and not for the
purpose of adopting the principles they announce to their full
extent, differ from the case at bar in this, that here the bene-
ficiaries have no right to claim the extra allowance ; and they
have no rights in it, until the trustees in the exercise of their
judgment determine it is necessary to their support and they
have received it.

We are of the opinion, therefore, that the trustees have not
the power under the sixth paragraph of the will to make an
extra allowance for the purpose of discharging the commercial
obligations of the beneficiaries named therein, and that such
application of the income of the estate is not a valid exercise
of the discretion vested in them.

The decree must be reversed, as to that portion thereof
from which the appeal was taken, and the cause remanded for

further proceedings in accordance with the views herein expressed.

> *Decree reversed as to that portion thereof from which the appeal was taken, with costs in this Court to be paid by Isaac and Meyer Bergman, costs below out of the estate.*