WAESCHE ET AL. *v.* RIZZUTO

[No. 129, September Term, 1960.]

*Decided March 28, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY and MARBURY, JJ., and MICHAELSON, J., specially assigned.

*Robert W. Beall* for the appellants.

*Raymond A. Kirby,* with whom were *William J. O'Donnell* and *Stedman Prescott, Jr.,* on the brief, for the appellee.

MICHAELSON, J., by special assignment, delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Montgomery County, passed in a cause in which the complainant, Florence Rizzuto, sued the appellants, Russell R. Waesche, Jr., and Harry Lee Waesche, Trustees named in the Last Will and Testament of Russell R. Waesche, Sr., to have the court construe and enforce the testamentary trust alleged to have been created. By its decree, the lower court assumed jurisdiction of the trust, directed the trustees to render a complete accounting of all funds received by them as trustees under the will, and ordered them to pay certain monies to the appellee, Florence Rizzuto, as a *cestui que* trust.

The facts in this case are somewhat complicated but, in substance, are as follows: Admiral Russell R. Waesche, Sr., at one time Commandant of the U. S. Coast Guard, died in Montgomery County, Maryland, on October 17, 1946. His Last Will and Testament, executed on May 29, 1946, was

duly admitted to probate in the Orphans' Court for Montgomery County. The two older sons of the testator, Russell R. Waesche, Jr., and Harry Lee Waesche, were named executors and co-trustees. At the time of his death, the testator left surviving him his widow, Agnes Rizzuto Waesche, and four sons, the above named two sons, a third son, James M., these three being children of a former marriage, and a fourth son, William Alexander Waesche, a child of the marriage to Agnes Rizzuto Waesche. The appellee, Florence Rizzuto, was a sister of Agnes Rizzuto Waesche, and she had lived in the Waesche home for approximately fifteen years prior to the death of Agnes R. Waesche on November 3, 1947. During the time that Florence lived in the Waesche home, she was regarded as a member of the household and was treated accordingly.

When the estate of Admiral Waesche was settled, the trustees received a net distribution of $21,564.66 as a part of the trust fund.

At the time of the death of Russell R. Waesche, Sr., in 1946, his widow, Agnes, was not in good health, and she became almost helpless during the last year of her life. She executed a will on February 25, 1947, and died on November 3, 1947, a little more than a year after her husband's death. Her will was also admitted to probate in the Orphans' Court for Montgomery County, Maryland. The testatrix named Russell R. Waesche, Jr. (who was one of the executors and trustees under her husband's will) and Florence Rizzuto, her sister, as executors and trustees in her will, and she designated Harry Lee Waesche and her sister, Florence, as co-guardians of the minor son, William, who was thirteen years of age at the time of his mother's death. After the death of his mother, William lived in the home of Harry Lee Waesche, except during the time he was away at school or serving in the Army. He became twenty-one years of age on August 8, 1954.

The provisions of the will of Agnes R. Waesche were similar in many respects to those of her husband's will. She left the residue of her estate in trust for three purposes: (1) to provide for the proper support, comfort and education of her

minor son, William, (2) to provide for, or aid in, the support and comfort of her sister, Florence Rizzuto, and (3) to provide for a monthly payment of $15.00 towards the support of her mother. The trust which Agnes R. Waesche established was to terminate upon the completion of her son's education or upon his reaching the age of majority and becoming self supporting. Upon the completion of the trusts established by the testatrix, the trustees were directed to pay any remaining balance to her son, William, outright. (See third item of her will.)

After Admiral Waesche's death in 1946, Florence Rizzuto continued to live with her sister in the house which became the property of Agnes R. Waesche as the survivor of her husband. Florence helped to take care of her sister and helped to run the household until Agnes died in November, 1947. During this period of time the trustees of the Admiral's estate made a number of payments or advances out of his estate to Florence Rizzuto to defray the cost of managing the home and paying for the living expenses of Agnes R. Waesche and Florence. The total of these expenditures was approximately $9,400. This money was not improperly spent or wasted.

The inventoried personal estate of Agnes R. Waesche consisted of $5,138.50, and the sale of her home after her death produced the net sum of $18,497.26. The executors of her estate, Russell R. Waesche and Florence Rizzuto, in May, 1948, repaid unto the trustees under the Admiral's will the sum of $8,404.79, a major part of the above mentioned payments or advances totalling approximately $9,400.00.

Admiral Waesche, at the time of his death, had an insurance policy of National Service Life Insurance in the amount of $10,000. His two older sons, Russell, Jr., and Harry Lee, were named principal beneficiaries in this policy on May 29, 1946, each to receive the sum of $5,000. The two younger sons were designated as contingent beneficiaries. Prior to May 29, 1946, the Admiral's wife, Agnes, was named as principal beneficiary and the four sons were named as contingent beneficiaries. It should be noted that this change of beneficiaries

was made on the same date as the execution of the Admiral's Last Will and Testament.

Each of the two sons, Russell, Jr., and Harry Lee, received in all $5,000 from the insurance, and each beneficiary deposited the money in separate individual bank accounts. Harry Lee later invested his $5,000 in stocks, and he said that his brother, Russell, agreed to do the same with the $5,000 which he received. Harry Lee testified that his reason for putting the insurance into a separate bank account was that, in conversation with his brothers, it was determined that this money was not a part of the residue and remainder of his father's estate, but that "it would be used under the intent of dad's wishes", that, although the stocks he purchased are registered in his and his wife's names jointly, this fact has never altered his intention that "this money was to be used to further dad's will"; that he didn't consider it as his sole property; that if he had so considered it, he would have spent it long ago.

After her sister's death, Florence Rizzuto went to live, early in 1948, with another sister and their mother in New Jersey. The trustees of the estate of Agnes Waesche paid to her or on her behalf from February, 1948, to September 30, 1954, the sum of $10,230.26. Of this amount approximately $8,700 was paid to her, and the balance for dental and medical expenses and on account of a business course. These payments started at $150.00 per month, were later reduced to $125.00 and then to $100.00 per month. She received $100.00 from the trustees of the estate of the Admiral on November 1, 1954, a premium for Blue Cross insurance in the amount of $8.90 was paid, and a check for another $100.00 was sent by the trustee, Russell R. Waesche, Jr., on November 29, 1954. No further payments were made to her.

The trustee, Russell R. Waesche, Jr., in correspondence with counsel for Florence Rizzuto, stated that no further payments were made to her because: "the only question with which I am concerned is her present ability to support herself or to assist in her support. My father's will leaves it to the discretion of his trustees whether or not to contribute

anything toward her support—in such manner as they shall decide."

The appellants contend: (a) that the testator did not create an enforceable testamentary trust; (b) that the lower court erred in finding that the approximate sum of $8,400 which was paid out by the trustees from the funds in hand and later returned to them was a part of the trust fund; (c) that the lower court erred in finding that the proceeds of the National Life Insurance policy in the amount of $10,000 were a part of the trust fund; (d) that the lower court erred in finding that the trustees abused their discretion by refusing to make payments to Florence A. Rizzuto after November 29, 1954.

It is, principally, the construction placed on the third and fourth items or paragraphs of the will of Russell R. Waesche, Sr., which has caused the controversy in this case. These items are as follows:

> "*Third*: I give, devise and bequeath all the rest, residue and remainder of my estate of whatever character unto my trustees to have and to hold the same, which is hereinafter referred to as the trust fund, upon and for the following trusts and purposes:
>
> 1. It is my will and desire that my trustees, after giving careful consideration to the value of all property, bonds, cash in bank, and other assets, together with income therefrom, including any Government pension or other remuneration, which my beloved wife, Agnes Rizzuto Waesche, may own or become entitled to upon or subsequent to my death, determine from time to time what additional financial aid, if any, may be necessary and proper for the adequate support and comfort of my said wife, and, under such arrangements and at such time or times as they shall decide best, defray such additional financial aid, if any, as so determined, from the trust fund herein provided.
>
> 2. Florence Rizzuto, my sister-in-law, having made her home with us as a part of our household for

approximately fourteen years, has become practically an established member of our family. Therefore, it is my will and desire that my trustees, after carefully considering (a) the financial ability of my wife, Agnes, to aid in or contribute from her own property and income for the support and comfort of her sister, Florence, and (2) the reasonableness and ability of my sister-in-law, Florence, upon the recovery or death of my wife, Agnes, to engage in employment to provide for or aid in her own support and comfort, make such arrangements from time to time as they shall deem just and equitable to assure the adequate support and comfort of the said Florence Rizzuto for the remainder of her life or until she marry, and defray the costs and expenses therefor from the trust fund herein provided in such manner as they may decide.

3. It is my will and desire that my trustees, after carefully considering the financial ability of my wife, Agnes, to aid in or contribute from her own property and income for the support, comfort and education of our minor son, William Alexander, determine from time to time what additional financial aid, if any, may be necessary and proper for the adequate support, comfort and education of William Alexander, and, under such arrangements and at such time or times as they shall deem best, expend from the trust fund such amounts for such financial aid and pay the same to whomsoever acts as guardian and provides a home for William Alexander, such financial aid to be continued until his education is completed, or until he reaches the age of majority and becomes self-supporting, as may be determined by my trustees in their discretion."

"*Fourth*: I have designated my two executors and trustees as the principal beneficiaries of my National Service Life Insurance, and, realizing it is beyond my power by this will and testament to do so, but

relying upon faith and confidence in my trustees that they will comply with my desires, it is my wish that, upon my death, the monthly payments of insurance to my trustees be included in the trust fund and be administered for the carrying out of the trusts herein provided."

The first question to be decided is whether or not it was the intention of the testator to create an enforceable trust and whether he did, in fact, create such a trust under the foregoing provisions of his will.

The creation of an express trust must include the following essentials: first, a subject matter for a proper trust; second, a person competent to create a trust; third, one capable of holding the property as trustee, and fourth, a person for whose benefit the trust property is held. *Sieling v. Sieling,* 151 Md. 536, 550; Miller, *Construction of Wills,* § 169.

Whether or not a trust is created by the terms of a will is a question of intention, technical words not being required. It is enough that the intention to create a trust is apparent. Jarman on Wills (5th ed.), §§ 355, 356; *Coudon v. Updegraf,* 117 Md. 71, 78.

In that case this Court stated that, in the interpretation of wills "the cardinal canon around which all others center is this, that the intention of the testator when ascertained from the whole instrument, or from the instrument as read in light of surrounding circumstances existing at the date of its execution, must be given effect if that intention does not antagonize or conflict with some rule of law or property." *Henderson v. Henderson,* 64 Md. 185; *Darden v. Bright,* 173 Md. 563; *Robinson v. Mercantile Trust Co.,* 180 Md. 336; *Jones v. Holloway,* 183 Md. 40; *Robb v. Berryman,* 215 Md. 161; 95 C.J.S., *Wills,* §§ 590, 592.

A reading of the will shows clearly that the testator intended to provide for the welfare of the natural objects of his bounty, who were named as his beneficiaries, namely, his wife, his minor son, and also the complainant, Florence Rizzuto, who was referred to in the will as "having made her home with us as a part of our household for approxi-

mately fourteen years, has become practically an established member of our family."

The testator, in the Third item of his will, gave, devised and bequeathed all the rest, residue and remainder of his estate of whatever character unto his named trustees "to have and to hold the same, which is hereinafter referred to as the *trust fund,* upon and for the desired trusts and purposes." (Emphasis supplied.) He then expresses, in the three ensuing sub-paragraphs, his "will and desire" to be executed by the trustees. The testator points out the specific property which should comprise the trust fund, and he sets forth in detail the duties to be performed by the trustees in behalf of the designated beneficiaries.

Further, in the Fifth item of the will, the testator provided for the final distribution of the balance of the trust fund by the trustees upon completion of the trusts.

Thus it would seem pertinent to inquire: If the testator did not intend to create a valid testamentary trust, and did not establish a trust, what did he intend to do?

In answering this question the appellants contend, in substance, at some length, that the testator, by the use of the words "it is my will and desire", "relying upon faith and confidence in my trustees that they will comply with my desires", "it is my wish", was merely making suggestions or recommendations to the trustees, and that it was within the absolute and unconditional discretion of the trustees to decide whether, if at all, they should carry out these recommendations. Appellants say that these words are not sufficient to create a trust. They do concede, however, that whether or not a trust is created by precatory words must be determined from the context of each will and from the facts of each case.

While it is true that expressions of recommendation, hope and desire are not always imperative, they are flexible in character, and whether they are to prevail in a particular case is always a question of construction upon the whole will. *Chase v. Plummer,* 17 Md. 165. A distinction has been drawn between cases in which the gift to the first devisee is for life

only and those in which the gift is absolute and precatory words are superadded to restrict the absolute estate or gift. *Williams v. Worthington*, 49 Md. 572; *Pratt v. Sheppard, etc., Hospital*, 88 Md. 610; *Blackshere v. Samuel Ready School*, 94 Md. 773. Precatory words in a will are sufficient to create a trust where the testator has pointed out with clearness and certainty the objects of the trust, and the subject matter on which it is to attach, or from which it is to arise and be administered. *Handley v. Wrightson, et al.*, 60 Md. 198; *Gerke v. Colonial Trust Company*, 114 Md. 289. In this latter case, this Court said that the use of the words "will and wish" in the context of the will were clearly mandatory and sufficient to declare that the property be held in trust until the time appointed for sale and distribution.

We are, therefore, of the opinion that the testator intended to create a trust, and did create an enforceable trust as set forth in his will.

The second contention of the appellants relates to the sum of $8,404.79 which had been a part of the trust fund of the Admiral's estate and which his trustees spent for the support and comfort of Florence Rizzuto and Agnes R. Waesche and for other items such as real estate taxes on the Waesche residence, payments on the mortgage debt of the residence, sanitary charges, hospital expenses for care and treatment of Agnes R. Waesche during her illness, and repairs to the residence. The total was approximately $9,400. The sum of $8,-404.79 was paid back by the executors and trustees of the estate of Agnes R. Waesche to the trustees of the Admiral's estate on May 2, 1948, nearly five months after the death of the testatrix. The appellants contend that this sum should have remained in the trust fund of the estate of Agnes R. Waesche, and should not have been repaid to the trustees of the Admiral's estate.

The trustees of the testator's estate were directed by subparagraph one of the Third item of the will to give careful consideration to the value of all property and other assets which his wife might own or become entitled to upon or subsequent to his death, and then to determine what additional

financial aid, if any, might be necessary for her adequate support.

Pursuant to the duties and responsibilities required of them as trustees, they proceeded to manage the testator's estate, and to make disbursements to or on behalf of the designated beneficiaries. The trustees spent substantial sums of money but none of it was wasted.

Russell R. Waesche, Jr., one of the co-trustees of the Admiral's estate, was also co-trustee of the estate of Agnes R. Waesche, and by the terms of her will, he, with the co-trustee, Florence Rizzuto, managed her estate and disbursed substantial sums of money from February, 1948, to September, 1954, as required by the will.

In view of the directions and wishes and desires of both the testator and testatrix, the respective trustees were required to exercise their discretion in using trust funds of both estates to carry out the designated purposes. They had a free hand in handling these assets and if, in so doing, they decided that it was proper to repay to the testator's trust estate the sum of $8,404.79 expended in behalf of Agnes R. Waesche and Florence Rizzuto, it was an honest exercise of discretion.

The co-trustee, Harry Lee Waesche, testified that all decisions by himself and his brother as trustees were made after consultation between them. They apparently discussed the financial situation of their step-mother and decided that they should give her temporary financial aid from the trust fund of their father's estate. Whether such financial aid was regarded as a loan or an advance would make little difference if it was within the proper discretion of the trustees in carrying out the testator's intention "under such arrangements as they shall decide best." It would seem that the trustees of the testator's estate exercised reasonable discretion in requiring the money to be repaid by the trustees of the estate of the testatrix when there were assets available in her estate (after her death) to reimburse the trustees of the testator's estate. Likewise, the trustees of the estate of the testatrix, in the exercise of discretion to "make such arrangements from time to time as

they shall deem just and equitable to assure adequate support and comfort of the said Florence Rizzuto", acted in good faith and did not abuse their discretion.

It should be noted that the co-trustee, Russell R. Waesche, Jr., who acted in a duel capacity as co-trustee of each of the trust estates, had approved these arrangements, and thus it would seem that he cannot properly contend that it was right for the trustees of his father's estate to give financial aid to those beneficiaries of the Admiral's will, and wrong for the trustees of the estate of the testatrix to repay this money from her estate as reimbursement. He was a party to both transactions.

A court of equity will not interfere in the exercise of the discretionary power conferred on the trustees provided that this power was honestly and reasonably exercised. However, it must appear that the trustees acted in good faith, having a proper regard to the wishes of the testator and to the nature and character of the trust reposed in them. *Pole v. Pietsch,* 61 Md. 570, 572; *Levi v. Bergman,* 94 Md. 204. See also *Washington Col. v. Safe D. & Tr. Co.,* 186 Md. 89; 4 Bogert, *Trusts and Trustees,* §§ 811, 814; *Brown v. McLanahan,* 148 F. 2d 703 (C. C. A. 4th 1945). We are of the opinion that the acts of the trustees were in furtherance of the intentions and wishes of both the testator and the testatrix, and that the sum of $8,404.79 was properly paid back to the trustees of the Admiral's estate.

The next contention of the appellants is that the lower court erred in deciding that the proceeds of the National Service Life Insurance policy in the amount of $10,000, mentioned in the Fourth item of the testator's will, were a part of the trust fund.

The evidence shows that prior to May 2, 1946, the testator had designated his wife, Agnes R. Waesche, as the principal beneficiary and his son, William, as the original contingent beneficiary. On May 2, 1946, he named his said wife as the principal beneficiary and he designated his four sons as contingent beneficiaries, to share equally. On May 29, 1946, the testator again made a change in the beneficiaries

of this insurance. He designated his two sons, Russell Randolph Waesche, Jr. and Harry Lee Waesche, as the principal beneficiaries in the amount of $5,000 each, and his other two sons, James M. Waesche and William Alexander Waesche, as contingent beneficiaries in the amount of $5,000 each. The testator made this last change of beneficiaries in his insurance on the same day be executed his Last Will and Testament.

Reference to the Fourth item of his will (above) shows that the testator knew he could not make any change in the beneficiaries of this insurance by his will, but that he did rely upon faith and confidence in his sons, as trustees, to comply with *his desires,* and *it was his wish* that the monthly payments of insurance to his trustees be included in the trust fund and be administered for the carrying out of the trusts herein provided. (Emphasis supplied.)

Here, again, the testator used words similar to those used in other foregoing paragraphs of his will. Did he intend to use them with the same import and effect?

This Court, in *Jones v. Holloway,* 183 Md. 40, 45, stated: "It is also a settled rule in Maryland that when a certain term appears in a will more than once, the Court will infer that the testator intended the term to have the same meaning wherever used, unless a contrary intention clearly appears from the context. If the testator has used words in one part of his will in a way that clearly indicates his own understanding of their import, * * * there can be no safer way to ascertain his purpose than to give to the same words when they appear elsewhere in the will the same meaning that he attached to them in the instance where his understanding of them is apparent, except when a different purpose in their use is disclosed." See also *Grieves v. Grieves,* 132 Md. 300, wherein this Court held that where the word "desire" in all other parts of a will is used in a sense clearly mandatory it would not be given a deprecatory meaning in another part of the will in the absence of anything to show that the word was there used with such a different intention.

Since the words used by the testator in the Third item or paragraph of his will have been construed by this Court as

precatory words sufficient to create a trust, the same meaning is applied to the repeated use of these words in the Fourth item or paragraph, namely, that they are sufficient to impress the insurance money with a trust. This is the clear and expressed intention of the testator.

In the case of *Burgess v. Murray*, 194 F. 2d 131 (C. A. 5th, 1952), the insured named his father as beneficiary of a National Service Life Insurance policy, and designated his sister as contingent beneficiary. Prior to his death, the insured wrote a letter to his father stating that if he died, he wanted his father to see that insured's two children were taken care of, and that unless his father needed the insurance money for sickness or other emergency, he should save the money for education of the insured's children. The court held that a trust was created for the insured's children.

In the case of *Batts v. United States*, 120 F. Supp. 26 (D. C. N. C., 1954), the court stated that a review of the comparatively recent decisions of the federal courts directly involving National Service Life Insurance shows those courts to be consistently emphasizing adherence to the intention of a deceased insured in the matter of disposition of the proceeds of his government insurance. The court added, mentioning approval of the decision in *Bradley v. United States*, 143 F. 2d 573 (C. C. A. 10th, 1944), that is was in accord with the view that in these insurance cases involving change of beneficiary the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured. Each case must rest on its own peculiar facts, the controlling factor being the ascertainment of the intent of the insured.

Therefore, this Court cannot agree with the contention of the appellants that the testator did not intend to have the insurance money become a part of the trust fund.

The final contention of the appellants relates to the matter of the support of Florence Rizzuto, the complainant.

The evidence shows that the trustees refused to make any payments to her for her "adequate support and comfort" after November, 1954. They contend that she has not made a conscientious effort to engage in employment to provide for

or aid in her own support, and also that she is not entitled to further support from the estate of the testator.

At the time of the death of Agnes R. Waesche, in 1947, Florence Rizzuto was nearly forty years old. She had little or no business training, and she had poor health at intervals. She has several physical disabilities and abnormalities which detract from her appearance. Without laboring the details, we think the evidence clearly shows that the complainant is unable to engage in employment that would provide for or aid in her own support. The testator did not intend that the trustees should exercise absolute and unconditional discretion to terminate payments to her. They were directed by the testator's will to "make such arrangements from time to time as they shall deem *just* and *equitable* to provide for or aid in her own support and comfort for the remainder of her life or until she shall marry, and defray the costs and expenses therefor from the trust fund." (Emphasis supplied.)

While it is true that trustees may exercise authority and discretion as to the amount of allowance to be paid to the beneficiary for support (*Offutt v. Offutt,* 204 Md. 101), they may not exercise powers granted in a way that is detrimental to the *cestui que* trust. *Brown v. McLanahan, supra.*

The position now taken by the trustees is somewhat inconsistent when considered in the light of their previous actions as trustees. In the years 1946, 1947 and 1948 they paid slightly more than $5,600 to Florence Rizzuto, and while it is true it was not solely for her support, it was done pursuant to the trustees' understanding of the duties and responsibilities placed upon them by the will of their father. Having understood and interpreted the intention of the testator in exercising the authority vested in them, they have no power now to alter the nature and object of the will appointing them, nor may they dispense with the performance of the conditions imposed upon them. *Stein v. Safe D. & T. Co.,* 127 Md. 206; *Hill on Trustees,* § 219. See also, *Sangston v. Hack,* 52 Md. 173.

We are of the opinion that the Chancellor was correct in deciding that the beneficiary, Florence Rizzuto, was entitled

to just and equitable treatment from the trustees, and that they should be required to provide sufficient money to aid in her support and comfort.

*Decree affirmed, the costs to be paid from the trust estate.*